**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

CARMEN DENISE HEREDIA,
            *Defendant-Appellant.*

No. 03-10585

D.C. No.
CR-02-00773-
JMR-JJM

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
John M. Roll, District Judge, Presiding

Argued and Submitted
December 12, 2006—San Francisco, California

Filed April 2, 2007
Amended April 30, 2007

Before: Mary M. Schroeder, Chief Judge, Harry Pregerson,
Alex Kozinski, Pamela Ann Rymer, Andrew J. Kleinfeld,
Michael Daly Hawkins, Sidney R. Thomas,
Barry G. Silverman, Susan P. Graber,
M. Margaret McKeown, Richard A. Paez,
Richard C. Tallman, Richard R. Clifton,
Consuelo M. Callahan and Carlos T. Bea, Circuit Judges.

Opinion by Judge Kozinski
Concurrence by Judge Kleinfeld;
Dissent by Judge Graber

## COUNSEL

Wanda K. Day, Tucson, Arizona; Jeffrey T. Green, Eric A. Shumsky, Eamon P. Joyce and Matthew J. Warren, Sidley Austin, LLP, Washington D.C., for the defendant-appellant.

Paul K. Charlton, United States Attorney for the District of Arizona; Christina M. Cabanillas, George Ferko and Bruce M. Ferg, Assistant United States Attorneys, Tucson, Arizona, for the plaintiff-appellee.

Kenneth W. Starr, Michael D. Shumsky and Gregory L. Skidmore, Kirkland & Ellis, LLP, Washington, D.C.; Sheryl Gordon McCloud, Law Offices of Sheryl Gordon McCloud, Seattle, Washington, for the National Association of Criminal Defense Lawyers as amicus curiae in support of the defendant-appellant.

Saji Vettiyil, Vettiyil & Associates, P.C., Nogales, Arizona, for Arizona Attorneys for Criminal Justice, as amicus curiae in support of the defendant-appellant.

---

## ORDER

Footnote 4 of the opinion in this case, filed April 2, 2007, is amended to read as follows:

> As our cases have recognized, deliberate ignorance, otherwise known as willful blindness, is categorically different from negligence or recklessness. *See, e.g.*, *United States* v. *Fulbright*, 105 F.3d 443, 447 (9th Cir. 1997); *United States* v. *Sanchez-Robles*, 927 F.2d 1070, 1073 (9th Cir. 1991). A willfully blind defendant is one who took *deliberate* actions to avoid confirming suspicions of criminality. A reckless defendant is one who merely knew of a substan-

tial and unjustifiable risk that his conduct was criminal; a negligent defendant is one who should have had similar suspicions but, in fact, did not.

---

## OPINION

KOZINSKI, Circuit Judge:

We revisit *United States* v. *Jewell*, 532 F.2d 697 (9th Cir. 1976) (en banc), and the body of caselaw applying it.

### I

Defendant Carmen Heredia was stopped at an inland Border Patrol checkpoint while driving from Nogales to Tucson, Arizona. Heredia was at the wheel and her two children, mother and one of her aunts were passengers. The border agent at the scene noticed what he described as a "very strong perfume odor" emanating from the car. A second agent searched the trunk and found 349.2 pounds of marijuana surrounded by dryer sheets, apparently used to mask the odor. Heredia was arrested and charged with possessing a controlled substance with intent to distribute under 21 U.S.C. § 841(a)(1).

At trial, Heredia testified that on the day of her arrest she had accompanied her mother on a bus trip from Tucson to Nogales, where her mother had a dentist's appointment. After the appointment, she borrowed her Aunt Belia's car to transport her mother back to Tucson.[1] Heredia told DEA Agent Travis Birney at the time of her arrest that, while still in Nogales, she had noticed a "detergent" smell in the car as she prepared for the trip and asked Belia to explain. Belia told her

---

[1] Belia was not the aunt in the car with Heredia at the time she was stopped at the checkpoint. Belia was traveling on the same interstate at about the same time, but in a separate car.

that she had spilled Downey fabric softener in the car a few days earlier, but Heredia found this explanation incredible.

Heredia admitted on the stand that she suspected there might be drugs in the car, based on the fact that her mother was visibly nervous during the trip and carried a large amount of cash, even though she wasn't working at the time. However, Heredia claimed that her suspicions were not aroused until she had passed the last freeway exit before the checkpoint, by which time it was too dangerous to pull over and investigate.

The government requested a deliberate ignorance instruction, and the judge obliged, overruling Heredia's objection. The instruction, cribbed from our circuit's *Model Jury Instruction 5.7*, read as follows:

> You may find that the defendant acted knowingly if you find beyond a reasonable doubt that the defendant was aware of a high probability that drugs were in the vehicle driven by the defendant and deliberately avoided learning the truth. You may not find such knowledge, however, if you find that the defendant actually believed that no drugs were in the vehicle driven by the defendant, or if you find that the defendant was simply careless.[2]

On appeal, defendant asks us to overrule *Jewell* and hold that section 841(a)(1) extends liability only to individuals who act with actual knowledge.[3] Should *Jewell* remain good law, she asks us to reverse her conviction because the instruction given to the jury was defective and because there was an

---

[2]The model deliberate ignorance instruction was amended to include a third element, *see* Part III *infra*, following the panel's opinion in this case.

[3]Amici, the National Association of Criminal Defense Lawyers and the Arizona Attorneys for Criminal Justice, also advocate this position.

insufficient factual basis for issuing the instruction in the first place.

## II

**[1]** While *Jewell* has spawned a great deal of commentary and a somewhat perplexing body of caselaw, its core holding was a rather straightforward matter of statutory interpretation: " '[K]nowingly' in criminal statutes is not limited to positive knowledge, but includes the state of mind of one who does not possess positive knowledge only because he consciously avoided it." 532 F.2d at 702. In other words, when Congress made it a crime to "knowingly . . . possess with intent to manufacture, distribute, or dispense, a controlled substance," 21 U.S.C. § 841(a)(1), it meant to punish not only those who know they possess a controlled substance, but also those who don't know because they don't want to know.[4]

Overturning a long-standing precedent is never to be done lightly, and particularly not "in the area of statutory construction, where Congress is free to change [an] interpretation of its legislation." *Ill. Brick Co.* v. *Illinois*, 431 U.S. 720, 736 (1977). Even in the criminal context, where private reliance interests are less compelling,[5] stare decisis concerns still carry

---

[4]As our cases have recognized, deliberate ignorance, otherwise known as willful blindness, is categorically different from negligence or recklessness. *See, e.g.*, *United States* v. *Fulbright*, 105 F.3d 443, 447 (9th Cir. 1997); *United States* v. *Sanchez-Robles*, 927 F.2d 1070, 1073 (9th Cir. 1991). A willfully blind defendant is one who took *deliberate* actions to avoid confirming suspicions of criminality. A reckless defendant is one who merely knew of a substantial and unjustifiable risk that his conduct was criminal; a negligent defendant is one who should have had similar suspicions but, in fact, did not.

[5]*See Payne* v. *Tennessee*, 501 U.S. 808, 828 (1991) ("Considerations in favor of *stare decisis* are at their acme in cases involving property and contract rights, where reliance interests are involved."). *But see Busic* v. *United States*, 446 U.S. 398, 404 (1980) (invoking stare decisis in the interpretation of a sentencing enhancement provision); *United States* v. *Aguon*, 851 F.2d 1158, 1177 (9th Cir. 1988) (Wallace, J., dissenting) ("The doctrine of *stare decisis* is equally applicable to settled interpretations of a criminal statute."), *overruled on other grounds by Evans* v. *United States*, 504 U.S. 255, 265 (1992).

great weight, particularly when a precedent is as deeply entrenched as *Jewell*. *See Evans* v. *United States*, 504 U.S. 255, 268-69 (1992) (noting that stare decisis carries considerable weight when "many other courts . . . have interpreted the statute in the same way"). Since *Jewell* was decided in 1976, every regional circuit—with the exception of the D.C. Circuit —has adopted its central holding. *See* n.11 *infra*. Indeed, many colloquially refer to the deliberate ignorance instruction as the "*Jewell* instruction." *See, e.g.*, *United States* v. *Bussey*, 942 F.2d 1241, 1246 (8th Cir. 1991); *United States* v. *Lara-Velasquez*, 919 F.2d 946, 951 n.5 (5th Cir. 1990). Congress has amended section 841 many times since *Jewell* was handed down, but not in a way that would cast doubt on our ruling. Given the widespread acceptance of *Jewell* across the federal judiciary, of which Congress must surely have been aware, we construe Congress's inaction as acquiescence.[6]

That said, there are circumstances when a precedent becomes so unworkable that keeping it on the books actually undermines the values of evenhandedness and predictability that the doctrine of stare decisis aims to advance. *See Payne*

---

[6]Our dissenting colleague seeks support for her position from the fact that Congress has, on occasion, defined the scienter requirement in some criminal statutes as "knows, or has reasonable grounds to believe." Dissent at 4684. But "has reasonable grounds to believe" defines a mental state that is less than actual knowledge. By contrast, *Jewell* defines willful blindness as knowledge—and sets a much higher standard for satisfying it. Thus, under *Jewell*, the prosecution must prove that defendant was aware of a "high probability" that he is in the possession of contraband, and that he "deliberately avoided learning the truth." This standard focuses on defendant's actual beliefs and actions, whereas "has reasonable grounds to believe" is an objective standard that could be satisfied by showing what a reasonable person would believe, regardless of defendant's actual beliefs. That Congress chose to set a lower scienter requirement in some criminal statutes tells us nothing about our interpretation of "knowledge" in *Jewell*. It certainly provides an insufficient basis for rejecting an interpretation that Congress has left undisturbed for three decades and that has since been adopted by ten of our sister circuits. *See* n.11 *infra*.

v. *Tennessee*, 501 U.S. 808, 827 (1991). Here, we recognize that many of our post-*Jewell* cases have created a vexing thicket of precedent that has been difficult for litigants to follow and for district courts—and ourselves—to apply with consistency.[7] But, rather than overturn *Jewell*, we conclude that the better course is to clear away the underbrush that surrounds it.

## III

**[2]** The parties have pointed out one area where our cases have not been consistent: Whether the jury must be instructed that defendant's motive in deliberately failing to learn the truth was to give himself a defense in case he should be charged with the crime.[8] *Jewell* itself speculated that defendant's motive for failing to learn the truth in that case was to "avoid responsibility in the event of discovery." 532 F.2d at 699.[9] Yet the opinion did not define motive as a separate prong of the deliberate ignorance instruction. And, we affirmed, even though the instruction given at Jewell's trial made no mention of motive. *Id.* at 700. Since then, we've upheld two-pronged instructions, similar to the one given here, in at least four other published opinions. *See United States* v. *Shannon*, 137 F.3d 1112, 1117 n.1 (9th Cir. 1998) (per curiam); *United States* v. *McAllister*, 747 F.2d 1273, 1275 (9th Cir. 1984); *United States* v. *Henderson*, 721 F.2d

---

[7]The panel opinion and the dissent in this case, *United States* v. *Heredia*, 429 F.3d 820 (9th Cir. 2005), illustrate some of the difficulties.

[8]The motive prong usually requires the jury to find that defendant was deliberately ignorant "in order to provide himself with a defense in the event of prosecution." *United States* v. *Baron*, 94 F.3d 1312, 1317 (9th Cir. 1996).

[9]The concurrence makes much out of this phrase, concurrence at 4673, but it cuts entirely the other way because (as noted in the text) *Jewell* approved an instruction that did not contain the motive prong. Even though the *Jewell* court believed this was defendant's likely motive, it did not chose to make it an independent element of deliberate indifference.

276, 278 (9th Cir. 1983); *United States* v. *Suttiswad*, 696 F.2d 645, 650 (9th Cir. 1982).

**[3]** The first mention of the motive prong came in a dissent by then-Judge Kennedy, who also authored the dissent in *Jewell*. *See United States* v. *Murrieta-Bejarano*, 552 F.2d 1323, 1326 (9th Cir. 1977) (Kennedy, J., dissenting). Judge Kennedy's chief concern was with what he viewed as the absence of *deliberate* avoidance on the part of the defendant in that case. *See id.* at 1325. At any rate, he was not writing for the court. Yet some of our opinions seem to have adopted the motive prong, providing little justification for doing so other than citation to Judge Kennedy's dissent. *See, e.g.*, *United States* v. *Baron*, 94 F.3d 1312, 1318 n.3 (9th Cir. 1996); *United States* v. *Kelm*, 827 F.2d 1319, 1324 (9th Cir. 1987); *United States* v. *Pac. Hide & Fur Depot, Inc.*, 768 F.2d 1096, 1098 (9th Cir. 1985); *United States* v. *Garzon*, 688 F.2d 607, 609 (9th Cir. 1982). Three other federal circuits have followed suit. *See United States* v. *Puche*, 350 F.3d 1137, 1149 (11th Cir. 2003); *United States* v. *Willis*, 277 F.3d 1026, 1032 (8th Cir. 2002); *United States* v. *Delreal-Ordones*, 213 F.3d 1263, 1268-69 (10th Cir. 2000).

Heredia argues that the motive prong is necessary to avoid punishing individuals who fail to investigate because circumstances render it unsafe or impractical to do so. She claims that she is within this group, because her suspicions did not arise until she was driving on an open highway where it would have been too dangerous to pull over. She thus claims that she had a motive *other* than avoiding criminal culpability for failing to discover the contraband concealed in the trunk.

**[4]** We believe, however, that the second prong of the instruction, the requirement that defendant have *deliberately* avoided learning the truth, provides sufficient protections for defendants in these situations. A deliberate action is one that is "[i]ntentional; premeditated; fully considered." *Black's Law Dictionary* 459 (8th ed. 2004). A decision influenced by coer-

cion, exigent circumstances or lack of meaningful choice is, perforce, not deliberate. A defendant who fails to investigate for these reasons has not deliberately chosen to avoid learning the truth.[10]

[5] We conclude, therefore, that the two-pronged instruction given at defendant's trial met the requirements of *Jewell* and, to the extent some of our cases have suggested more is required, *see* page 4663 *supra*, they are overruled. A district judge, in the exercise of his discretion, may say more to tailor the instruction to the particular facts of the case. Here, for example, the judge might have instructed the jury that it could find Heredia did not act deliberately if it believed that her failure to investigate was motivated by safety concerns. Heredia did not ask for such an instruction and the district judge had no obligation to give it sua sponte. Even when defendant asks for such a supplemental instruction, it is within the district court's broad discretion whether to comply.

---

[10]The concurrence would add the third prong to the *Jewell* instruction in order to protect defendants who have "innocent" motives for deliberately avoiding the truth. But the deliberate ignorance instruction defines when an individual has sufficient information so that he can be deemed to "know" something, even though he does not take the final step to confirm that knowledge. *See* Dissent at 4685. The *reason* the individual fails to take that final step has no bearing on whether he has sufficient information so he can properly be deemed to "know" the fact. An innocent motive for being deliberately ignorant no more vitiates the knowledge element of a crime than does an innocent motive vitiate any other element.

Equally misplaced is the concurrence's concern about FedEx and similar package carriers. Concurrence at 4678. The fact that a tiny percentage of the tens of thousands of packages FedEx transports every day may contain contraband hardly establishes a high probability that any particular package contains contraband. Of course, if a particular package leaks a white powder or gives any other particularized and unmistakable indication that it contains contraband, and the carrier fails to investigate, it may be held liable—and properly so.

**IV**

Defendant also claims there was insufficient foundation to give the *Jewell* instruction. In order to address this claim, we must first identify the standard by which we review a district court's decision to issue a *Jewell* instruction.

**A.** The differing standards of review we apply reflect the relative competencies and functions of the appellate and district courts. *Miller* v. *Fenton*, 474 U.S. 104, 114-15 (1985). Whether a jury instruction was properly given presents two questions, one primarily factual, the other purely legal. Whether the substance of the instruction itself is correct—i.e., whether it accurately describes the elements of the charged crime—is a legal question of the sort we review de novo. *United States* v. *Feingold*, 454 F.3d 1001, 1007 (9th Cir. 2006). But whether an instruction should be given in the first place depends on the theories and evidence presented at trial. This is mostly a factual inquiry, but not entirely. It also requires judgment as to whether the proposed instruction is relevant to the issues presented or would unduly confuse the jury. The district judge's proximity to the trial and intimate knowledge of the record justify considerable deference to his judgment in these situations. Accordingly, we typically review such decisions for abuse of discretion. *See, e.g.*, *United States* v. *Johnson*, 459 F.3d 990, 992 n.3 (9th Cir. 2006).

*Jewell* cases have been an exception to this general order of things, as we have long reviewed a district court's decision to give a deliberate ignorance instruction de novo. *See Shannon*, 137 F.3d at 1117; *United States* v. *Fulbright*, 105 F.3d 443, 447 (9th Cir. 1997); *United States* v. *Asuncion*, 973 F.2d 769, 772 (9th Cir. 1992). This rule derives, not from *Jewell* itself, but from a later case, *Asuncion*. *Asuncion* summarily adopted the de novo standard in *Jewell* cases, purportedly relying on another of our cases, *United States* v. *Sanchez-Robles*, 927 F.2d 1070, 1073 (9th Cir. 1991). *Sanchez-Robles*

provides no support for this proposition. It mentions de novo review, but only in conjunction with the legal question of whether the jury instruction "misstated elements of a statutory crime." *Id.* The rule adopted in *Asuncion* has been followed by no other federal court of appeals.[11]

[6] On reflection, we find no reason to treat *Jewell* instructions differently from other jury instructions. Still, we might have been willing to leave well enough alone had *Asuncion*'s progeny shown promise. But, in the years since, we've seen a proliferation of narrow, heavily fact-dependent and at times contradictory opinions that have been difficult for both judges and litigants to navigate.[12] It should not be surprising that our

[11]Six of our sister circuits have explicitly adopted the abuse of discretion standard for reviewing a district judge's decision to give a deliberate ignorance instruction. *United States* v. *Flores*, 454 F.3d 149, 156 (3d Cir. 2006); *United States* v. *Ruhe*, 191 F.3d 376, 384 (4th Cir. 1999); *United States* v. *Fuchs,* 467 F.3d 889, 902 (5th Cir. 2006); *United States* v. *Beaty*, 245 F.3d 617, 621 (6th Cir. 2001); *United States* v. *McClellan*, 165 F.3d 535, 549 (7th Cir. 1999); *United States* v. *King*, 351 F.3d 859, 866 (8th Cir. 2003). The Eleventh Circuit follows what it describes as a "deferential" standard. *United States* v. *Puche*, 350 F.3d 1137, 1148 (11th Cir. 2003). The Second Circuit has suggested that a highly deferential standard of review is appropriate because claim that the factual predicates for giving the instruction are unmet "is little more than a challenge to the sufficiency of the evidence to support a conscious avoidance conviction. A defendant challenging a conviction based on insufficient evidence bears a heavy burden." *United States* v. *Aina-Marshall*, 336 F.3d 167, 171 (2d Cir. 2003). Two other circuits have recognized conflicts in their caselaw regarding the appropriate standard of review, but have declined, thus far, to resolve them. *See United States* v. *Lizardo*, 445 F.3d 73, 85 (1st Cir. 2006); *United States* v. *McConnel*, 464 F.3d 1152, 1158 n.3 (10th Cir. 2006). And, as previously mentioned, the D.C. Circuit has yet to fully endorse the deliberate ignorance instruction. *See United States* v. *Alston-Graves*, 435 F.3d 331, 339-41 (D.C. Cir. 2006).

[12]Whether the evidence is sufficient to warrant giving a *Jewell* instruction is an issue that has divided several panels. *See, e.g.*, *Heredia*, 429 F.3d at 820; *United States* v. *McAllister*, 747 F.2d 1273 (9th Cir. 1984); *United States* v. *Murrieta-Bejarano*, 552 F.2d 1323 (9th Cir. 1977). In cases where we've held that the evidence was insufficient, we've often

attempt to micromanage the district courts by cataloguing the various situations in which an instruction is justified has yielded such poor results. We therefore abandon the *Asuncion* enterprise and re-adopt the normal rule applicable to jury instructions by reviewing the decision to give a deliberate ignorance instruction for abuse of discretion. Opinions to the contrary, *see* page 4665-66 *supra*, are overruled.

**B.** A district court should approach the government's request to give a *Jewell* instruction in the same way it deals with any other proposed jury instruction. In general, a party is entitled to an instruction to help it prove its theory of the case, if the instruction is "supported by law and has foundation in the evidence." *Jones* v. *Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

**[7]** In deciding whether to give a particular instruction, the district court must view the evidence in the light most favorable to the party requesting it. *See Mathews* v. *United States*, 485 U.S. 58, 63 (1988); *Turner* v. *United States*, 396 U.S. 398, 417-18 (1970). When a party requests instructions on alternative theories, the district judge must consider the instructions separately and determine if the evidence could support a verdict on either ground. *See Griffin* v. *United States*, 502 U.S. 46, 59 (1991) (noting that a general verdict cannot stand if the jury could have convicted on a legally flawed theory). When knowledge is at issue in a criminal case, the court must first determine whether the evidence of defendant's mental state, if viewed in the light most favorable

distinguished the facts from those in *Jewell* itself on exceedingly narrow grounds. *See, e.g.*, *Heredia*, 429 F.3d at 827 (distinguishing *Jewell* because defendant's close relationship with the purported principals mitigated evidence of suspicion); *Baron*, 94 F.3d at 1318 (distinguishing *Jewell* on the basis that defendant was not aware of a secret compartment in the car). The result has been a patchwork of rules that apply only in particular factual situations, such as the rule regarding suspicious scents. *See* n.15 *infra*.

to the government, will support a finding of actual knowledge.[13] If so, the court must instruct the jury on this theory. Actual knowledge, of course, is inconsistent with willful blindness. The deliberate ignorance instruction only comes into play, therefore, if the jury rejects the government's case as to actual knowledge. In deciding whether to give a willful blindness instruction, in addition to an actual knowledge instruction, the district court must determine whether the jury could rationally find willful blindness even though it has rejected the government's evidence of actual knowledge. If so, the court may also give a *Jewell* instruction.

[8] This case well illustrates the point. Taking the evidence in the light most favorable to the government, a reasonable jury could certainly have found that Heredia actually knew about the drugs. Not only was she driving a car with several hundred pounds of marijuana in the trunk, but everyone else who might have put the drugs there—her mother, her aunt, her husband—had a close personal relationship with Heredia. Moreover, there was evidence that Heredia and her husband had sole possession of the car for about an hour prior to setting out on the trip to Tucson. Based on this evidence, a jury could easily have inferred that Heredia actually knew about the drugs in the car because she was involved in putting them there.

The analysis in the foregoing paragraph presupposes that the jury believed the government's case in its entirety, and disbelieved all of Heredia's exculpatory statements. While this would have been *a* rational course for the jury to take, it was not the only one. For example, a rational jury might have bought Heredia's basic claim that she didn't know about the drugs in the trunk, yet disbelieved other aspects of her story.[14]

---

[13]As previously noted, willful blindness is tantamount to knowledge. *See* n.6 *supra*. We use the phrase "actual knowledge" to describe the state of mind when defendant, in fact, knows of the existence of the contraband rather than being willfully blind to its existence.

[14]We have long held that juries are not bound to believe or disbelieve all of a witness's testimony. "The jury may conclude a witness is not tell-

The jury could, for example, have disbelieved Heredia's story about *when* she first began to suspect she was transporting drugs. The jury could have found that her suspicions were aroused when Belia gave her the unsatisfactory explanation for the "detergent" scent,[15] *see* pages 4658-59 *supra*, or while she drove to Tucson but before the last exit preceding the checkpoint. Or, the jury might have believed Heredia that she became suspicious only after she had passed the last exit before the checkpoint but disbelieved that concerns about safety motivated her failure to stop.

[9] All of these are scenarios the jury could rationally have drawn from the evidence presented, depending on how credible they deemed Heredia's testimony in relation to the other evidence presented. The government has no way of knowing which version of the facts the jury will believe, and it is entitled (like any other litigant) to have the jury instructed in conformity with each of these rational possibilities. That these possibilities are mutually exclusive is of no consequence. A party may present alternative factual theories, and is entitled to instructions supporting all rational inferences the jury might draw from the evidence.

We do not share the worry, expressed in some of our cases, that giving both an actual knowledge and a deliberate igno-

---

ing the truth as to one point, is mistaken as to another, but is truthful and accurate as to a third." *Elwert* v. *United States*, 231 F.2d 928, 934 (9th Cir. 1956).

[15]Some of our cases have suggested that irregular or strong scents are not enough to support the inference that defendant suspected he might be transporting drugs. *See Sanchez-Robles*, 927 F.2d at 1075; *Baron*, 94 F.3d at 1318. This rule is a byproduct of the hands-on approach to reviewing *Jewell* cases we eschew today and does not survive our opinion. Whether an irregular scent provides a sufficient foundation for the first prong of the *Jewell* instruction depends on the evidence in each case. It is a matter committed to the sound discretion of the district court. Contrary statements in our opinions are disapproved.

rance instruction is likely to confuse the jury. *See, e.g.*, *Sanchez-Robles*, 927 F.2d at 1073-74. A jury is presumed to follow the instructions given to it, *Hovey* v. *Ayers*, 458 F.3d 892, 913 (9th Cir. 2006), and we see no reason to fear that juries will be less able to do so when trying to sort out a criminal defendant's state of mind than any other issue. Nor do we agree that the *Jewell* instruction risks lessening the state of mind that a jury must find to something akin to recklessness or negligence. *See, e.g.*, *United States* v. *Alvarado*, 817 F.2d 580, 584 (9th Cir. 1987); *Garzon*, 688 F.2d at 609. The instruction requires the jury to find beyond a reasonable doubt that defendant "was aware of a high probability" of criminality and "deliberately avoided learning the truth." Indeed, the instruction actually given in this case told the jurors to acquit if they believed defendant was "simply careless." Recklessness or negligence never comes into play, and there is little reason to suspect that juries will import these concepts, as to which they are not instructed, into their deliberations. *See* n.4 *supra*.

[10] Even if the factual predicates of the instruction are present, the district judge has discretion to refuse it. In cases where the government does not present a deliberate ignorance theory, the judge might conclude that the instruction will confuse the jury. The same may be true where a defendant disputes only identity. Concerns of this nature are best dealt with by the district judge, whose familiarity with the evidence and the events at trial is necessarily superior to our own. We will second guess his decision only in those rare cases where we find an abuse of discretion. For the reasons explained, *see* pages 4668-69 *supra*, the district court did not abuse its discretion by giving the *Jewell* instruction here.[16]

---

[16]Some of our opinions have commented on how often *Jewell* instructions should be given. *See, e.g.*, *Baron*, 94 F.3d at 1318 n.3 ("We emphasize again today, as we have in the past, that a *Jewell* instruction is rarely appropriate."); *Sanchez-Robles*, 927 F.2d at 1073 ("[W]e have recognized that the instruction should be used sparingly."); *United States* v. *Alvarado*,

## V

We decline the invitation to overrule *Jewell*, and further hold that district judges are owed the usual degree of deference in deciding when a deliberate ignorance instruction is warranted. While the particular form of the instruction can vary, it must, at a minimum, contain the two prongs of suspicion and deliberate avoidance. The district judge may say more, if he deems it advisable to do so, or deny the instruction altogether. We review such decisions for abuse of discretion. The instruction given at defendant's trial met these requirements, and the district judge did not abuse his discretion in issuing it.

**AFFIRMED.**

---

KLEINFELD, Circuit Judge, concurring in the result:

Because the evidence in this case justified a wilful blindness instruction, and the instruction's form (to which no objection was made below) was not *plainly* erroneous, I would affirm Heredia's conviction. But the majority errs in

817 F.2d 580, 584 (9th Cir. 1987) ("The cases in which the facts point to deliberate ignorance are relatively rare."); *United States* v. *Garzon*, 688 F.2d 607, 609 (9th Cir. 1982) ("The instruction should be given rarely because of the risk that the jury will convict on a standard of negligence."); *Murrieta-Bejarano*, 552 F.2d at 1325 ("The *Jewell* instruction should not be given in every case where a defendant claims a lack of knowledge, but only in those comparatively rare cases where, in addition, there are facts that point in the direction of deliberate ignorance."). This kind of speculation is misguided and should not be read to imply additional limitations on a district court's discretion to issue a *Jewell* instruction beyond what we've indicated above. Whether the instruction is given depends solely on the state of the evidence in the case, analyzed as we have explained above. Cases suggesting the contrary are, to that extent, overruled.

concluding that motivation to avoid criminal responsibility need not be an element of a wilful blindness instruction.

Suppose Heredia were a witness rather than defendant, perhaps because the government had charged her aunt who owned the car instead of her. If Heredia were asked "was there marijuana in the car," counsel would have objected for lack of foundation, and the objection would have been sustained.[1] Heredia's suspicion would not be enough to let her testify to knowledge.[2] Yet she can be convicted under a statute that requires her to have knowledge. This is not impossible, but it is a troubling paradox for criminal knowledge to require *less* than evidentiary knowledge. To avoid injustice, the jury needs to be instructed that they must find a motivation to avoid criminal responsibility to be the reason for lack of knowledge.[3]

In our en banc decision in *United States v. Jewell*, a man offered to sell marijuana to the defendant and his friend in a Tijuana bar, and then to pay defendant $100 to drive a car across the border.[4] The friend refused, saying that "it didn't sound right," and he "wanted no part of driving the vehicle."[5] But the defendant accepted the offer, even though he "thought

---

[1] *See* F.R.E. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

[2] *See id.*, Advisory Committee Note ("The rule requiring that a witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact is a most pervasive manifestation of the common law insistence upon the most reliable sources of information.") (quotation omitted).

[3] *See United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976) (en banc) ("The substantive justification for the rule [that wilful blindness is equivalent to knowledge] is that deliberate ignorance and positive knowledge are equally culpable.") (quotation omitted).

[4] *Id.* at 699 n.1.

[5] *Id.*

there was probably something illegal in the vehicle."[6] The defendant determined that there was no contraband in the glove compartment, under the front seat, or in the trunk, so he concluded that "the people at the border wouldn't find anything either."[7] He admitted to seeing a secret compartment in the trunk (where 110 pounds of marijuana was later found), but did not attempt to open it.[8]

We held that, in these circumstances, the knowledge element in the applicable drug statutes[9] could be satisfied without positive, confirmed personal knowledge that the marijuana was in the trunk.[10] We took particular note of the motive in such deliberate avoidance of knowledge cases "to avoid responsibility in the event of discovery":

> [T]he jury could conclude that . . . although appellant knew of the presence of the secret compartment and had knowledge of facts indicating that it contained marijuana, he deliberately avoided positive knowledge of the presence of the contraband *to avoid responsibility in the event of discovery.* If . . . positive knowledge is required to convict, the jury would have no choice consistent with its oath but to find appellant not guilty even though he deliberately contrived his lack of positive knowledge.[11]

We described such blindness as "wilful" and not merely negligence, foolishness or recklessness,[12] differing from positive

---

[6]*Id.*

[7]*Id.*

[8]*Id.*

[9]21 U.S.C. § 841(a)(1), 952(a).

[10]*See United States v. Jewell*, 532 F.2d 697, 700, 704 (9th Cir. 1976) (en banc).

[11]*Id.* at 699 (emphasis added).

[12]*Id.* at 700 & n.7.

knowledge "only so far as necessary to encompass a calculated effort to avoid the sanctions of the statute while violating its substance."[13]

> A court can properly find wilful blindness only where it can almost be said that the defendant actually knew. He suspected the fact; he realised its probability; but he refrained from obtaining the final confirmation *because he wanted in the event to be able to deny knowledge. This, and this alone, is wilful blindness. It requires in effect a finding that the defendant intended to cheat the administration of justice. Any wider definition would make the doctrine of wilful blindness indistinguishable from the civil doctrine of negligence in not obtaining knowledge.*[14]

Then-judge Kennedy, joined by Judges Ely, Hufstedler and Wallace, vigorously dissented. They presciently warned that the majority opened the door too wide to suspicion as a substitute for scienter.

"Wilfulness" requires a "purpose of violating a known legal duty,"[15] or, at the very least, "a bad purpose."[16] That is why

---

[13]*Id.* at 704. The majority justifies its own deliberate avoidance of this language by noting that *Jewell* did not explicitly say that a wilful blindness instruction must contain a motivation to avoid criminal responsibility element. Majority at 4662 n.9. But the appellant in *Jewell* did not argue, in district court or on appeal, that the wilful blindness instruction was erroneous because it lacked the motivation element. Moreover, the *Jewell* court did not lay out a specific, inclusive wilful blindness instruction. It simply concluded that the one given was not plainly erroneous. *See id.* at 704 n.21. Justice and respect for the statutory language require that we clarify *Jewell* to require all three elements, awareness of high probability, deliberate avoidance of confirmation, and motivation to avoid criminal responsibility, both for giving the instruction and for the content of the instruction.

[14]*Id.* at 700 n.7 (quoting G. Williams, Criminal Law: The General Part, § 57 at 159 (2d ed. 1961)) (emphasis added).

[15]*United States v. Sehnal*, 930 F.2d 1420, 1427 (9th Cir. 1991) (citing *United States v. Cheek*, 498 U.S. 192, 199 (1991)).

[16]*United States v. Murdock*, 290 U.S. 389, 394 (1933), *overruled on*

wilful blindness is "equally culpable" to, and may be substituted for, positive knowledge.[17] But to allow conviction without positive knowledge or wilful avoidance of such knowledge is to erase the scienter requirement from the statute. And we do not have the authority to do this: "The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute."[18] The statute made it a crime for Heredia to "knowingly or intentionally" possess the marijuana in the trunk of her aunt's car with an intent to distribute it (that is, give the car back to her aunt or to someone else).[19] If she did not act "knowingly or intentionally," then she did not commit the crime.

Our cases subsequent to *Jewell* have generally hewed closely to its restrictiveness (though, as the majority notes, some appear to deviate on the wilfulness requirement[20] ). In our en banc decision in *United States v. Aguilar*,[21] we held that a "high probability of awareness of [a] circumstance" is not equivalent to knowledge in absence of "wilful blindness."[22] We adopted Judge Kennedy's language from *United States v. Pacific Hide & Fur Depot, Inc.*,[23] that mistake, negligent fail-

---

*other grounds by Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 70 (1964).

[17]*United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976) (en banc).

[18]*Liparota v. United States*, 471 U.S. 419, 424 (1985).

[19]21 U.S.C. § 841(a)(1).

[20]Majority at 4662-63 (citing *United States v. Shannon*, 137 F.3d 1112, 1117 & n.1 (9th Cir. 1998) (per curiam), *United States v. McAllister*, 747 F.2d 1273, 1275 (9th Cir. 1984), *United States v. Henderson*, 721 F.2d 276, 278 (9th Cir. 1983), and *United States v. Suttiswald*, 696 F.2d 645, 650 (9th Cir. 1982)).

[21]*United States v. Aguilar*, 80 F.3d 329, 332 (9th Cir. 1996) (en banc).

[22]*Id.*

[23]*United States v. Pacific Hide & Fur Depot, Inc.*, 768 F.2d 1096 (9th Cir. 1985).

ure to inquire, and even reckless disregard of the truth, did not amount to knowledge.[24] Instead, the government had to prove that the defendant "purposely contrived" to avoid positive knowledge "in order to have a defense:"

> A *Jewell* instruction is properly given only when defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate ignorance. It is not enough that defendant was mistaken, recklessly disregarded the truth, or negligently failed to inquire. Instead, the government must present evidence indicating that defendant purposely contrived to avoid learning all of the facts in order to have a defense in the event of subsequent prosecution. Absent such evidence, the jury might impermissibly infer guilty knowledge on the basis of mere negligence without proof of deliberate avoidance.[25]

We have repeatedly emphasized this wilfulness requirement, as in *United States v. Alvarado*, *United States v. Baron*, *United States v. Beckett*, *United States v. Garzon*, *United States v. Kelm*, and *United States v. Mapelli*.[26]

---

[24]*United States v. Aguilar*, 80 F.3d 329, 332 (9th Cir. 1996) (en banc) (quoting *United States v. Pacific Hide & Fur Depot, Inc.*, 768 F.2d 1096, 1098-99 (9th Cir. 1985)).

[25]*United States v. Aguilar*, 80 F.3d 329, 332 (9th Cir. 1996) (en banc) (quoting *United States v. Pacific Hide & Fur Depot, Inc.*, 768 F.2d 1096, 1098-99 (9th Cir. 1985)); *see also United States v. Murrieta-Bejarano*, 552 F.3d 1323, 1326 (9th Cir. 1977) (Kennedy, J., dissenting) ("The *Jewell* instruction should not be given unless the evidence can sustain a finding, beyond a reasonable doubt, that the defendant purposely contrived to avoid learning all of the facts in order to have a defense in the event of being arrested and charged.").

[26]*See United States v. Baron*, 94 F.3d 1312, 1317 (9th Cir. 1996) (collecting cases); *United States v. Mapelli*, 971 F.2d 284, 286 (9th Cir. 1992) ("The instruction enables the jury to deal with wilful blindness, where a person suspects a fact, realizes its probability, but refrains from obtaining final confirmation in order to be able to deny knowledge if apprehend-

The majority deviates from this long line of precedent by discarding the requirement of a motive to avoid criminal responsibility. I concede that our precedents have not been clear on whether motive must be an element of the instruction, or just an element for the judge to consider in determining whether to give a *Jewell* instruction.[27] The cure for this, however, is not to bless the *Jewell* instruction given in this case, but to make clear that a *Jewell* instruction should include a motive to avoid criminal responsibility element.

The majority converts the statutory element that the possession be "knowing" into something much less — a requirement that the defendant be suspicious and deliberately avoid investigating. The imposition on people who intend no crime of a duty to investigate has no statutory basis. The majority says that its requirement is enough to protect defendants who cannot investigate because of "coercion, exigent circumstances or lack of meaningful choice."[28] I am not sure what the latter two novelties mean (especially the term "meaningful" choice) or

---

ed."); *United States v. Alvarado*, 838 F.2d 311, 314 (9th Cir. 1988) ("[T]he facts must support the inference that the defendant . . . purposely contrived to avoid learning all of the facts in order to have a defense in the event of subsequent prosecution."); *United States v. Kelm*, 827 F.2d 1319, 1324 (9th Cir. 1987) ("There must be evidence that the defendant purposely avoided learning all of the facts in order to have a defense in the event of being arrested and charged); *United States v. Beckett*, 724 F.2d 855 856 (9th Cir. 1984) (similar); *United States v. Garzon*, 688 F.2d 607, 609 (9th Cir. 1982) (similar).

[27] *See e.g., United States v. Shannon*, 137 F.3d 1112, 1117 & n.1 (9th Cir. 1998) (per curiam) (implying approval of a *Jewell* instruction without a motive element); *United States v. Baron*, 94 F.3d 1312, 1317 (9th Cir. 1996) ("In this case, Baron argues that the government presented insufficient evidence establishing that he (1) suspected that the car contained drugs, (2) deliberately avoided taking steps to confirm or deny those suspicions, and (3) did so in order to provide himself with a defense in the event of prosecution. We agree. . . . Accordingly, . . . the district court erred by giving the *Jewell* instruction.").

[28] Majority at 4663-64.

how a jury would be instructed to give them concrete meaning. The majority's statement that "[a]n innocent motive for being deliberately ignorant" does not bar conviction under its rule"[29] seems to contradict its proposition that coercion or exigent circumstances excuse failure to investigate. The majority seems to mean that if someone can investigate, they must. A criminal duty to investigate the wrongdoing of others to avoid wrongdoing of one's own is a novelty in the criminal law.

The majority's "coercion, exigent circumstances or lack of meaningful choice" justifications for failure to investigate are too few. The government has not conscripted the citizenry as investigators, and the statute does not impose that unpleasant and sometimes risky obligation on people. Shall someone who thinks his mother is carrying a stash of marijuana in her suitcase be obligated, when he helps her with it, to rummage through her things? Should Heredia have carried tools with her, so that (if her story was true) she could open the trunk for which she had no key? Shall all of us who give a ride to child's friend search her purse or his backpack?

No "coercion, exigent circumstances, or lack of meaningful choice" prevents FedEx from opening packages before accepting them, or prevents bus companies from going through the luggage of suspicious looking passengers. But these businesses are not "knowingly" transporting drugs in any particular package, even though they know that in a volume business in all likelihood they sometimes must be. They forego inspection to save time, or money, or offense to customers, not to avoid criminal responsibility. But these reasons for not inspecting are not the ones acceptable to the majority ("coercion, exigent circumstances, or lack of meaningful choice"). The majority opinion apparently makes these businesses felons despite the fact that Congress did not. For that matter, someone driving his mother, a child of the sixties, to

---

[29]Majority at 4664 n.10.

Thanksgiving weekend, and putting her suitcase in the trunk, should not have to open it and go through her clothes.

A *Jewell* instruction ought to incorporate what our case law has developed, that the wilful blindness doctrine is meant to punish a defendant who "all but knew"[30] the truth — a defendant who "suspects a fact, realizes its [high] probability, but refrains from obtaining final confirmation in order to be able to deny knowledge if apprehended."[31] "This, and this alone, is wilful blindness."[32] The jury instruction in this case told the jury that Heredia had "knowing" possession of the marijuana in the trunk if she "was aware of a high probability" that drugs were in the car and "deliberately avoided learning the truth."[33] That mental state would fit FedEx and the child of an aging hippy, as well as a drug mule. A *Jewell* instruction ought to require (1) a belief that drugs are present,[34] (2) avoidance of confirmation of the belief,[35] and (3) wilfulness in that avoidance — that is, choosing not to confirm the belief in order to "be able to deny knowledge if apprehended."[36] The instruction should expressly exclude recklessness, negligence and mistake (the one given only excluded "simpl[e] careless-[ness]" and an "actual[ ] belie[f]" that no drugs were in the vehi-

---

[30]*United States v. Mapelli*, 971 F.2d 284, 286 (9th Cir. 1992).

[31]*Id.*

[32]*United States v. Jewell*, 532 F.2d 697, 700 n.7 (9th Cir. 1976) (en banc). (quoting G. Williams, Criminal Law: The General Part, § 57 at 157 (2d ed. 1961)).

[33]The instruction reads: "You may find that the defendant acted knowingly if you find beyond a reasonable doubt that the defendant was aware of a high probability that drugs were in the vehicle driven by the defendant and deliberately avoided learning the truth. You may not find such knowledge, however, if you find that the defendant actually believed that there were no drugs in the vehicle driven by the defendant, or if you find that the defendant was simply careless."

[34]*See United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976) (en banc); *United States v. Baron*, 94 F.3d 1312, 1318 n.3 (9th Cir. 1996).

[35]*See id.*

[36]*United States v. Mapelli*, 971 F.2d 284, 286 (9th Cir. 1992).

cle").**[37]** Anything less supports convictions of persons whom Congress excluded from statutory coverage with the word "knowingly." People who possess drugs, but do not do so "knowingly," are what we traditionally refer to as "innocent."

The reason that I concur instead of dissenting is that defendant did not object to these deficiencies in the instruction, and the deficiencies were not "plain."**[38]** To constitute plain error, "[a]n error . . . must be . . . obvious or readily apparent."**[39]** "At a minimum, court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under *current law*."**[40]**

Our previous cases did not make clear that the instruction had to say these things (they only made clear that the judge must decide there was some evidence of wilfulness before giving the instruction).**[41]** For that reason, it is not surprising that the instruction given tracked the language of our own form.**[42]**

---

**[37]** *See United States v. Aguilar*, 80 F.3d 329, 332 (9th Cir. 1996) (en banc) (quoting *United States v. Pacific Hide & Fur Depot, Inc.*, 768 F.2d 1096, 1098-99 (9th Cir. 1985) ("It is not enough that the defendant was mistaken, recklessly disregarded the truth, or negligently failed to inquire.").

**[38]** *See* FED. R. CRIM. P. 52(b); *United States v. Olano*, 507 U.S. 725, 734 (1993).

**[39]** *United States v. Young*, 470 U.S. 1, 16, n.14 (1985).

**[40]** *United States v. Olano*, 507 U.S. 725, 734 (1993) (emphasis added).

**[41]** *See supra* note 27.

**[42]** *See* Ninth Circuit Model Criminal Jury Instruction 5.7 (2003) ("You may find that the defendant acted knowingly if you find beyond a reasonable doubt that the defendant was aware of a high probability that [e.g., drugs were in the defendant's automobile] and deliberately avoided learning the truth. You may not find such knowledge, however, if you find that the defendant actually believed that [e.g., no drugs were in the defendant's automobile], or if you find that the defendant was simply careless."). *But see McDowell v. Calderon*, 130 F.3d 833, 840 (9th Cir. 1997) (model jury instructions are not a substitute for individual research and drafting); *United States v. Hegwood*, 944 F.2d 492, 496 (9th Cir. 1992) ("Had the district court merely [given] the model jury instruction, it would have committed plain error.").

Defendant's objection was to giving a *Jewell* instruction at all, rather than to the language in the *Jewell* instruction. She argued that "the instruction is not appropriate in this particular case" because "there is no evidence that she did anything . . . to deliberately avoid [learning the truth] . . . ." She did not argue in the district court, as she now does on appeal, that the wilful blindness instruction, if given, should include a requirement that a defendant's wilful blindness be motivated by a desire to avoid criminal responsibility.[43]

Defendant's argument was that the evidence showed that Heredia could not have discovered the marijuana because the key she had been given would not open the trunk (it seems to have been a valet key — the DEA had to break the trunk lock with a screwdriver), and that by the time she began suspecting the presence of drugs, there was no freeway exit before the checkpoint. As we held in *Mapelli*, a wilful blindness instruction is "inappropriate where the evidence could justify one of two conclusions, either that the defendant had knowledge, or that the defendant did not, but not a third conclusion, that the defendant deliberately shut her eyes to avoid confirming the existence of a fact she all but knew."[44] In this case, though, the district court correctly concluded that the evidence allowed the jury properly to conclude that there was wilful avoidance of positive knowledge.

I agree with the majority that our review of whether the instruction was justified is for abuse of discretion, not de novo.[45] The jury did not have to believe everything Heredia said. It

---

[43]Similarly, Heredia did not argue below that the *Jewell* instruction, as a matter of law, should never be given. Omitting a *Jewell* instruction altogether, as the dissent would, means that if a jury asks a judge to instruct it further on the meaning of "knowing," the court will decline. Rather than protecting defendants, that invites jury arbitrariness, because the meaning of knowledge in this context is important and non-obvious.

[44]*United States v. Mapelli*, 971 F.2d 284, 286 (9th Cir. 1992).

[45]Majority at 4665-66.

could believe all, part, or none of her testimony and the testimony of others. The district court reasonably exercised its discretion to give a *Jewell* instruction, because (1) there was testimony that Heredia's husband opened the trunk at Heredia's aunt's house while Heredia was present and could look if she wanted to, (2) the car smelled of fabric softener, (3) Heredia thought her mother and her mother's boyfriend were involved with drugs, (4) Heredia was suspicious because her mother and aunt were visibly "nervous," (5) Heredia knew she would be driving through a border patrol checkpoint, and (6) Heredia despite her suspicions avoided asking her mother and aunt if there were drugs in the car. Together, this evidence justified a jury inference of wilful avoidance of positive knowledge to avoid criminal responsibility if apprehended.

---

GRABER, Circuit Judge, with whom PREGERSON, THOMAS, and PAEZ, Circuit Judges, join, dissenting:

Assuming the *Jewell* instruction to be proper, I agree with the majority that the standard by which to review a district court's decision to give one is "abuse of discretion" in the light of the evidence presented at trial. But as a matter of statutory construction, I believe that the *Jewell* instruction is not proper because it misconstrues, and misleads the jury about, the mens rea required by 21 U.S.C. § 841(a)(1). Because the legal error of giving a *Jewell* instruction in this case was not harmless beyond a reasonable doubt, I respectfully dissent.

Under 21 U.S.C. § 841(a)(1), it is a crime to "*knowingly or intentionally* . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." (Emphasis added.) The plain text of the statute does not make it a crime to have a high probability of awareness of possession—knowledge or intention is required.

The majority recognizes that willful blindness is a mens rea separate and distinct from knowledge. *See* Majority op. at

4668 ("Actual knowledge, of course, is inconsistent with willful blindness."); *see also United States v. Jewell*, 532 F.2d 697, 705-06 (9th Cir. 1976) (en banc) (Kennedy, J., dissenting) ("The majority opinion justifies the conscious purpose jury instruction as an application of the wilful blindness doctrine recognized primarily by English authorities. . . . [T]he English authorities seem to consider wilful blindness a state of mind *distinct from, but equally culpable as*, 'actual' knowledge." (emphasis added)). Similarly, if not even more obviously, willful blindness is at least one step removed from intention.

Instead of justifying its sleight-of-hand directly, the majority points to the fact that *Jewell* has been on the books for 30 years and that Congress has not amended the statute in a way that repudiates *Jewell* expressly. Majority op. at 4661. I find this reasoning unpersuasive. "[C]ongressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction . . . ." *United States v. Craft*, 535 U.S. 274, 287 (2002) (internal quotation marks omitted). "It is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of the [courts'] statutory interpretation." *Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 186 (1994) (alteration in original) (internal quotation marks omitted); *see also Jones v. Liberty Glass Co.*, 332 U.S. 524, 533-34 (1947) (rejecting the doctrine of legislative acquiescence as, at best, "an auxiliary tool for use in interpreting ambiguous statutory provisions").

Whatever relevance congressional *inaction* holds in this case is outweighed by actual congressional *action*. Under 21 U.S.C. § 841(a)(1), a person is guilty of a crime only if the requisite act is performed "knowingly or intentionally." By contrast, both before and after *Jewell*, Congress has defined several other crimes in which the mens rea involves a high probability of awareness—but it has done so in phrases dramatically different than the one here, which lists only knowl-

edge and intent. *See, e.g.*, 18 U.S.C. §§ 175b(b)(1) ("knows or has reasonable cause to believe"), 175b(b)(2) (same), 792 ("knows, or has reasonable grounds to believe or suspect"), 842(h) ("knowing or having reasonable cause to believe"), 2332d(a) ("knowing or having reasonable cause to know"), 2339(a) ("knows, or has reasonable grounds to believe"), 2424(a) ("knowing or in reckless disregard of the fact"). Most importantly, Congress has done so in adjacent sections of the same statute, the Controlled Substances Act, 21 U.S.C. §§ 801-971, and even within the same section of the same statute. *See* 21 U.S.C. §§ 841(c)(2) ("knowing, or having reasonable cause to believe"), 843(a)(6) ("knowing, intending, or having reasonable cause to believe"), 843(a)(7) (same). "It is axiomatic that when Congress uses different text in 'adjacent' statutes it intends that the different terms carry a different meaning." *White v. Lambert*, 370 F.3d 1002, 1011 (9th Cir. 2004). Thus, "[i]f we do our job of reading the statute whole, we have to give effect to [its] plain command, even if doing that will reverse the longstanding practice under the statute and the rule." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (citations omitted).

The majority recognizes that the *Jewell* instruction embodies a substantive decision that those who possess a controlled substance and "don't know because they don't want to know" are just as culpable as those who knowingly or intentionally possess a controlled substance. Majority op. at 4660; *see also* Model Penal Code § 2.02 cmt. 9, at 248 ("Whether such cases [of wilful blindness] should be viewed as instances of acting recklessly or knowingly presents a subtle but important question."). But Congress never made this substantive decision about levels of culpability—the *Jewell* court did. By "clear[ing] away the underbrush that surrounds" the instruction, majority op. at 4662, the majority chooses to reaffirm this judge-made substantive decision. In so doing, the majority directly contravenes the principle that "[i]t is the legislature, not the Court, which is to define a crime, and ordain its punishment." *United States v. Wiltberger*, 18 U.S. (5 Wheat.)

76, 95 (1820). " 'The spirit of the doctrine which denies to the federal judiciary power to create crimes forthrightly admonishes that we should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute.' " *Jewell*, 532 F.2d at 706 n.7 (Kennedy, J., dissenting) (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)). The majority creates a duty to investigate for drugs that appears nowhere in the text of the statute, transforming knowledge into a mens rea more closely akin to negligence or recklessness.

I agree with the *Jewell* court that "one 'knows' facts of which he is less than absolutely certain." 532 F.2d at 700. That being so, the mens rea-reducing *Jewell* instruction not only is wrong, it also is unnecessary in the face of the kind of proof that a prosecutor is likely to produce. For example, if your husband comes home at 1:00 a.m. every Friday (after having left work at 5:00 p.m. the day before as usual), never reveals where he has been, won't look you in the eye on Fridays, and puts Thursday's shirts in the hamper bearing lipstick stains, your friends will agree that you "know" he is having an affair even if you refuse to seek confirmation. The role of a jury is to apply common sense to the facts of a given case. A sensible jury will be persuaded that a drug mule "knows" what she is carrying when confronted with evidence of how mules typically operate and how this mule acted—all without reference to a *Jewell* instruction.

Thus, I would overrule *Jewell* and interpret 21 U.S.C. § 841(a) to require exactly what its text requires—a knowing or intentional mens rea. If Congress wants to criminalize willful ignorance, it is free to amend the statute to say so and, in view of the several examples quoted above, it clearly knows how.

Because I believe that the district court's giving of a *Jewell*

instruction in this case was legal error,[1] " 'the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.' " *Griffin v. United States*, 502 U.S. 46, 52 (1991) (quoting *Yates v. United States*, 354 U.S. 298, 312 (1957)).[2] As the majority acknowledges, it is not possible to tell whether the jury convicted Carmen Heredia based on actual knowledge. "[A] rational jury might have bought Heredia's basic claim that she didn't know about the drugs in the trunk, yet disbelieved other aspects of her story," thereby concluding that she acted with willful ignorance. Majority op. at 4668. Accordingly, I cannot find that the error of giving a *Jewell* instruction was harmless, and I respectfully dissent.

---

[1] Heredia objected at trial to the giving of the *Jewell* instruction, RT 3/12/03, pp. 186-90, and her own set of proposed instructions excluded it. Thus, we review under the usual principles and not just for plain error.

[2] In *Griffin*, the Supreme Court applied the *Yates* harmless error test to legal errors in instructing a jury and the *Turner v. United States*, 396 U.S. 398 (1970), harmless error test to instructional errors concerning the weight of the evidence. *Griffin*, 502 U.S. at 59-60. Under the *Turner* rule, " '[w]hen a jury returns a guilty verdict on an indictment charging several acts . . . , the verdict stands if the evidence is sufficient with respect to any one of the acts charged.' " *Griffin*, 502 U.S. at 56-57 (quoting *Turner*, 396 U.S. at 420). The Court distinguished the two errors by reasoning that

> [w]hen . . . jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence.

*Id.* at 59.

Several of our sister circuits have held the giving of a *Jewell* instruction to be harmless error if sufficient evidence supports a finding of actual knowledge. *See, e.g.*, *United States v. Leahy*, 445 F.3d 634, 654 n.15 (3d Cir. 2006); *United States v. Hanzlicek*, 187 F.3d 1228, 1235-36 (10th Cir. 1999); *United States v. Mari*, 47 F.3d 782, 786-87 (6th Cir. 1995); *United States v. Adeniji*, 31 F.3d 58, 63 (2d Cir. 1994); *United States v. Stone*, 9 F.3d 934, 939-42 (11th Cir. 1993). But that is because they presume the *Jewell* instruction to be a correct statement of the law and, thus, apply the *Turner* rule.