**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50400 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-00321-MMM-1 |
| v. | |
| MANUK KARAPETYAN, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted February 6, 2012
Pasadena, California

Before: REINHARDT, WARDLAW, and CALLAHAN, Circuit Judges.

Manuk Karapetyan appeals his jury trial convictions on twenty-two counts

of health care fraud, two counts of transactional money laundering, and four counts

of concealment money laundering. Karapetyan challenges the district court's

decision to give the jury a *Jewell* deliberate ignorance instruction on each of the

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

charges.[1]  That instruction allowed the jury to convict based on either Karapetyan's actual knowledge or his awareness of a high probability of criminality and deliberate avoidance of the truth.  Karapetyan also challenges his convictions for insufficiency of the evidence.  We have jurisdiction under 18 U.S.C. § 1291 and we affirm.[2]

We review the district court's decision to give a *Jewell* deliberate ignorance instruction for abuse of discretion.  *United States v. Heredia*, 483 F.3d 913, 921 (9th Cir. 2007) (en banc).  We review the sufficiency of the trial evidence *de novo*.  *United States v. Shipsey*, 363 F.3d 962, 971 n.8 (9th Cir. 2004).  "There is sufficient evidence to support a conviction if, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in *Jackson*)).

**1.**     A *Jewell* deliberate ignorance instruction is proper where "the instruction is 'supported by law and has foundation in the evidence.'"  *Heredia*,

_____

[1] The deliberate ignorance instruction was first recognized in *United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976) (en banc).

[2] Because the parties are familiar with the facts and procedural history, we do not restate them here except as necessary to explain our decision.

483 F.3d at 922 (quoting *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)). The instruction was proper here because the evidence supported a conclusion that Karapetyan (1) was aware of a high probability that the business was illegal and (2) deliberately avoided the truth. *Heredia*, 483 F.3d at 917, 922.

The first prong of the *Jewell* instruction was satisfied by evidence that Karapetyan was suspicious of illegality. In 2004, Karapetyan claims that a friend, Sedrek Asatryan, approached Karapetyan with a business proposal to establish a medical supply company, USA Independent Medical Corporation ("USA Independent"). USA Independent was a sham company, and Karapetyan became deeply involved in a scheme to defraud the Medicare system. Only Karapetyan was listed as the corporation's president, secretary, and agent for service of process on the company's Articles of Incorporation and was named as an officer and CEO of USA Independent on tax documents. Karapetyan's alleged partner in this scheme, Asatryan, told Karapetyan that he was going to transport supplies for the sham company, but Karapetyan never did so. Karapetyan admitted that he never witnessed any signs of business activity at the office space that he rented, and yet he deposited large sums of money, totaling over $500,000 in Medicare reimbursement funds, into accounts that he opened. Karapetyan knew that his alleged partner refused to be named on anything that might connect him to the

3

company.  Finally, Karapetyan claimed that he questioned Asatryan on a few of these suspect aspects of the business, indicating that he was suspicious of the activity, but then accepted blanket non-answers rather than inquiring further.

The second prong of the instruction was met by evidence that Karapetyan deliberately avoided learning the truth when presented with circumstances that raised his suspicion.  Karapetyan accepted the notion that the company was to be kept a secret because Asatryan did not want people to know that his family was living in the United States because his father was famous; Karapetyan asked no follow-up questions to this request for secrecy.  When Karapetyan asked Asatryan why he was not transporting medical supplies as they had agreed, he accepted Asatryan's unbelievable answer—that he was transporting the large quantities by way of ship, even though Asatryan had previously told Karapetyan that he would be transporting the supplies by truck—without inquiring further.  Karapetyan did not question why the business had to be put in his own name; he simply accepted that Asatryan had bad credit.  And Karapetyan deposited large sums of money into two bank accounts, even though he admitted that he saw no signs of an actual business in the leased office space, without asking where the money was coming from.

4

Even if the district court had abused its discretion in giving the *Jewell* instruction, the error was harmless. "Application of the harmless error doctrine is appropriate where the evidence of guilt is so overwhelming that a conviction is compelled." *United States v. Alvarado*, 838 F.2d 311, 317 (9th Cir. 1988) (finding that an improper *Jewell* instruction was a harmless error). There was overwhelming evidence that Karapetyan actually knew beyond a reasonable doubt of the scheme to defraud Medicare, and the error here, if any, was harmless.

**2.** Karapetyan challenges the sufficiency of the evidence of his knowledge and intent to commit the charged crimes. The *mens rea* here could have been proven with evidence either that Karapetyan actually knew of the illegality of his conduct, or that he was aware of a high probability of criminality and deliberately avoided the truth. Viewing the evidence in the light most favorable to the government, there was sufficient evidence to convict Karapetyan under either theory. *See supra*.

As to Karapetyan's intent to defraud the health care system,[3] "fraudulent intent may be established by circumstantial evidence . . . ." *United States v. Cloud*, 872 F.2d 846, 852 n.6 (9th Cir. 1989). Karapetyan established USA Independent

---

[3] We assume without deciding that intent is required. *See* 18 U.S.C. §§ 1347, 1956, 1957.

for the sole purpose of defrauding the Medicare system:  his name appears on all documents related to the business, and the business had no legitimate purpose at any time.  Karapetyan opened both business bank accounts and signed all transfers of money into and out of those accounts.  Karapetyan wrote two checks to himself and deposited them into his personal bank account and, four years later, after $65,000 had been withdrawn from one account and returned to Medicare as part of an investigation into the illegitimacy of USA Independent, Karapetyan withdrew the remaining $15,025.10 to close the account.  Moreover, fraudulent intent may be inferred simply from defendant's engaging in "highly unusual practice[s]." *United States v. Laykin*, 886 F.2d 1534, 1540 (9th Cir. 1989).  Thus, the jury could infer intent from the simple fact that a business earning hundreds of thousands of dollars for doing no apparent work at all was "highly unusual." *Id.*

**AFFIRMED**.