**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>SERGIO RAMOS-ATONDO,<br>*Defendant-Appellant*. | No. 12-50208<br><br>D.C. Nos.<br>8:11-cr-00087-JST-7<br>8:11-cr-00088-JST |

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>ALBERTO CORONA-VIDAL,<br>*Defendant-Appellant*. | No. 12-50211<br><br>D.C. No.<br>8:11-cr-00087-JST-3 |

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>JEANCARLO MARTINEZ,<br>*Defendant-Appellant*. | No. 12-50212<br><br>D.C. No.<br>8:11-cr-00087-JST-4 |

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee*,

            v.

VICTOR RAMOS,
            *Defendant-Appellant*.

No.  12-50214

D.C. No.
8:11-cr-00087-
JST-5

OPINION

Appeal from the United States District Court
for the Central District of California
Josephine Staton Tucker, District Judge, Presiding

Argued and Submitted
August 27, 2013—Pasadena, California

Filed October 11, 2013

Before: Ronald M. Gould and Johnnie B. Rawlinson,
Circuit Judges, and Paul C. Huck, District Judge.*

Opinion by Judge Gould

---

* The Honorable Paul C. Huck, District Judge for the U.S. District Court
for the Southern District of Florida, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed four defendants' convictions for conspiracy to import marijuana and importation of marijuana.

The panel held that the district court did not abuse its discretion by instructing the jury on a theory of deliberate ignorance in the context of a conspiracy, and that the theory of deliberate ignorance, which may be an alternative argument to actual knowledge, need not be exclusive.

The panel rejected defendant Ramos's contention that there was insufficient evidence to support his conviction.

The panel concluded that the district court did not abuse its discretion by admitting defendant Ramos-Atondo's prior alien smuggling conviction under Fed. R. Evid. 404(b) and not excluding it under Fed. R. Evid. 403.

### COUNSEL

David J. Zugman (argued), Burcham & Zugman, San Diego, California; Robison D. Harley, Jr. (argued), Santa Ana, California; Jennifer L. Coon, Law Office of Jennifer L. Coon, San Diego, California; and H. Dean Steward, San Clemente, California, for Defendants-Appellants.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Mark Remy Yohalem (argued), Office of the United States Attorney, Los Angeles, California; Amanda Liskamm, Office of the United States Attorney, Santa Ana, California, for Plaintiff-Appellee.

## OPINION

GOULD, Circuit Judge:

Defendants Sergio Ramos-Atondo, Alberto Corona-Vidal, Jeancarlo Martinez, and Victor Ramos appeal from their convictions for conspiring to import marijuana in violation of 21 U.S.C. § 963 and importation of marijuana in violation of 21 U.S.C. §§ 952 and 960.[1]  Defendants contend that the district court abused its discretion by instructing the jury on a theory of deliberate ignorance.  Defendant Ramos contests the sufficiency of the evidence to support his conviction and the district court's denial of his motion filed under Rule 29 of the Federal Rules of Criminal Procedure.  Defendant Ramos-Atondo contends that the district court abused its discretion by admitting evidence of his prior alien smuggling conviction under Rule 404(b) of the Federal Rules of Evidence.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

In the early morning of April 4, 2011, Border Patrol Agent Waller conducted surveillance of Calafia State Beach in San Clemente, California, a spot where maritime

---

[1] Ramos-Atondo was also convicted of being an illegal alien found in the United States following deportation in violation of 8 U.S.C. § 1326(a). He does not appeal that conviction or sentence.

smuggling frequently occurred. Around 4:50 a.m., he spotted a panga boat – an open-bow vessel commonly used for smuggling – approaching the shore without running lights. Using an infrared thermal device from his elevated position on the cliff, Agent Waller could see two people on the boat and what appeared to be several packages. The boat at first approached the beach at a high rate of speed, but then stopped fifty to seventy-five yards offshore for five to ten minutes. Agent Waller observed Agent Carrell's flashlight on the beach, at which point the panga boat turned around and headed out to the northwest. The panga boat was abandoned a short distance away at the beach on Dana Point, where border patrol agents recovered more than 740 pounds of marijuana. Agent Carrell testified that he brandished a flashlight before apprehending four men wearing tennis shoes and dark clothing on the beach. He identified the men as Ramos, Martinez, Corona-Vidal, and Ramiro Gallegos. None possessed any identifying documents or cell phones. But Agent Carrell recovered a room key for the San Clemente Inn from Ramos. Ramos's room at the San Clemente Inn contained two wallets belonging to the men arrested on the beach, and two cell phones. The room also contained a set of car keys to a red Chevrolet Silverado that was parked next to the room. Two participants in the charged smuggling operation testified against Defendants at trial. Gallegos, who had been arrested on the beach, testified against Ramos, Corona-Vidal, and Martinez.

According to Gallegos, the red Silverado belonged to Martinez, a childhood friend. Gallegos drove to San Clemente a week after he got a job offer from an unknown man outside of a liquor store in his hometown, San Diego. At the time of the offer, Gallegos understood that the job had something to do with marijuana. Gallegos expected to make

$4,000 to $8,000 for the job. The unknown man gave Gallegos a black Motorola phone. Later that night, Gallegos received a call on the phone with more instructions, including directions to the San Clemente Inn. The man on the phone told him to get two people to help, and that they should all wear dark clothing. The man also told him that they were going to unload packages off a panga boat and transfer them into a car. Gallegos went over to Corona-Vidal's house, smoked marijuana with Corona-Vidal and Martinez, and told them about the job unloading packages off a boat. He specifically told them that the job involved marijuana, and they agreed to help.

On April 3, 2011, Gallegos, Corona-Vidal, and Martinez drove to the San Clemente Inn in Martinez's red Silverado. They smoked marijuana around the truck while they waited in the parking lot. Gallegos testified that they were approached by a man with glasses who introduced himself as Victor Ramos. They went to Ramos's hotel room, where Gallegos saw Jonathan Peraza. Ramos then gave them instructions for unloading the packages. Around 3:00 a.m., Ramos woke everyone up, and they got into Peraza's black Ford Explorer. They drove down the hill to the beach, where they got out except for Peraza, who would stay on top of the hill with the car. Gallegos said that after about five minutes on the beach, they were arrested by border patrol agents. Agent Muglia testified that he received a call about a panga boat coming in, and that he searched for a "load vehicle" near Calafia State Beach. He observed a black Ford Explorer in the area, and followed it to a 7-Eleven. The driver, Peraza, consented to a search, and they found a San Clemente Inn parking pass.

Border patrol agents found Ramos-Atondo hiding in a public restroom near the abandoned panga boat around 12:30 p.m. on April 4, 2011. Dordier Lizarraga-Lizarraga was also apprehended in the restroom. Both men were covered with sand that stuck to their clothes as if they had been wet.

Lizarraga-Lizarraga testified against Ramos-Atondo, stating that Ramos-Atondo contacted him in March 2011 to help bring six bales of marijuana into the United States. Lizarraga-Lizarraga agreed and met Ramos-Atondo in Rosarito, Mexico, where the loaded panga boat was waiting. They used a pre-programmed GPS navigation system to guide the boat to the United States. Lizarraga-Lizarraga also testified that when he and Ramos-Atondo saw lights on Calafia State Beach, they went to another beach, abandoned the boat, and hid in a nearby public bathroom.

Defendants presented no evidence at trial. Defendants' apparent strategy was to cast doubt on the credibility of the government's witnesses, especially cooperating witnesses Gallegos and Lizarraga-Lizarraga. The defense also contended that Defendants did not have the requisite knowledge that they were involved in a drug smuggling operation because the panga boat could have been carrying illegal aliens rather than narcotics.

## II

Defendants challenge the district court's decision to give a deliberate ignorance instruction to the jury. We review a district court's decision to give a deliberate ignorance instruction for abuse of discretion. *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007) (en banc). When we review for abuse of discretion, we "first . . . consider whether

the district court identified the correct legal standard . . . then . . . determine whether the district court's findings of fact, and its application of those findings of fact to the correct legal standard, were illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

The prosecution proposed a deliberate ignorance instruction taken from Ninth Circuit Criminal Model Jury Instruction 5.7. Defendants filed a joint objection to the instruction, contending that it was "argumentative, confusing, misleading, and not rationally supported by the facts of the case." The district court ruled that the deliberate ignorance instruction was appropriate because the jury could find deliberate ignorance if it rejected the government's actual knowledge argument. The district court gave the following instruction to the jury:

> You may find that a defendant acted knowingly if you find beyond a reasonable doubt that the defendant:
>
> 1. was aware of a high probability that drugs were in the panga-style boat, and
>
> 2. deliberately avoided learning the truth.
>
> You may not find such knowledge, however, if you find that the defendant actually believed that no drugs were in the panga-style boat, or if you find that the defendant was simply careless.

We recognized the validity of a deliberate ignorance instruction in *United States v. Jewell*, 532 F.2d 697, 700, 704 (9th Cir. 1976) (en banc). We clarified that a district court may give a deliberate ignorance instruction if it determines that a jury could rationally find deliberate ignorance, even if the jury had rejected the government's evidence of actual knowledge. *Heredia*, 483 F.3d at 922. Deliberate ignorance involves "(1) a subjective belief that there is a high probability a fact exists and (2) deliberate actions taken to avoid learning the truth." *United States v. Yi*, 704 F.3d 800, 804 (9th Cir. 2013). In determining the applicability of the jury instruction, "the district court must view the evidence in the light most favorable to the party requesting it." *Id*.

Defendants contend that the district court should not have given the instruction because the government did not advance a deliberate ignorance theory at trial or mention deliberate ignorance in its closing argument. We disagree. It is true that most of the government's evidence focused on Defendants' actual knowledge that the boat contained marijuana. But at trial, Defendants maintained that they could have believed this was an alien smuggling operation and did not know that the boat contained a controlled substance. To be convicted under 21 U.S.C. § 952, a person must knowingly import a controlled substance. Defendants contended that they could not be convicted of this offense if they believed that the boat contained illegal aliens. Because the Defendants disputed their actual knowledge, the government was "entitled to instructions supporting all rational inferences the jury might draw from the evidence." *Heredia*, 483 F.3d at 923. If the jury believed Defendants' position that they did not have actual knowledge, then the government's evidence could still support the inference that Defendants knew that there was a high probability that drugs

were on the boat but deliberately chose not to confirm that suspicion.

To show deliberate ignorance, a defendant must have a subjective belief that there is a high probability that a fact exists. *Yi*, 704 F.3d at 804. There is ample evidence to support the inference that all Defendants were aware of a high probability that the boat had on it marijuana or another controlled substance rather than illegal aliens. Gallegos testified that he told both Corona-Vidal and Martinez that he had been solicited to do a job involving marijuana. He also testified that at the San Clemente Inn, Ramos explained the plan for unloading the "packages" from the boat to Gallegos, Corona-Vidal, and Martinez. Gallegos explained that he, Corona-Vidal, Martinez, and Ramos went down to the beach with the plan to take packages off the boat and put them in a car. Lizarraga-Lizarraga testified that Ramos-Atondo told him that they would be transporting marijuana, that the panga boat contained several packages, and that the boat traveled by a pre-programmed GPS at night from Mexico to the United States. The jury heard evidence that Ramos-Atondo had a prior conviction for alien smuggling from Mexico to the United States, so there is a high probability that he would understand that this trip with a skeleton crew on the panga boat differed from his previous smuggling experience when there were more than fifteen alien passengers aboard the panga boat.

The record also supports the inference that Defendants engaged in a deliberate act to avoid learning the truth. *See Yi*, 704 F.3d at 805. "A deliberate action is one that is intentional; premeditated; fully considered." *Heredia*, 483 F.3d at 920 (internal quotation marks and citation omitted). A failure to investigate can be a deliberate action.

*Id.* If the jury believed that Defendants did not know that they were involved in a drug smuggling operation, the jury could have inferred that Defendants' lack of knowledge resulted from their failure to investigate. *See United States v. McAllister*, 747 F.2d 1273, 1276 (9th Cir. 1984). The jury could have inferred that Corona-Vidal, Martinez, and Ramos deliberately chose not to ask why they were going to unload packages at the beach in the dark, wearing dark clothing, without any identification or possessions. The jury could have inferred that Ramos-Atondo chose not to examine the packages on the boat, or ask why he was taking a boat full of packages from Mexico to a beach in the United States in the dark using a pre-programmed GPS.

Defendants also contend that the district court erred by giving the deliberate ignorance instruction because it is impossible to conspire to be deliberately ignorant. This argument lacks merit. We have previously upheld a defendant's conviction for conspiracy to possess marijuana after concluding that the district court did not err by giving a deliberate ignorance instruction. *United States v. Nicholson*, 677 F.2d 706, 710 (9th Cir. 1982) ("The circumstances surrounding the investment opportunity presented to [defendant] would have put any reasonable person on notice that there was a 'high probability' that the undisclosed venture was illegal."). We said that "[t]he *Jewell* standard eliminates the need to establish such positive knowledge to obtain a conspiracy conviction." *Id.* at 711.

The district court has discretion to refuse to give a deliberate ignorance instruction where the jury may become confused or where a defendant only disputes identity. *Heredia*, 483 F.3d at 924. The government focused on and stressed its proof of Defendants' actual knowledge. But no

established principle of law declares that the deliberate ignorance instruction cannot be given unless deliberate ignorance is the main thrust of the government's case-in-chief or closing argument. The law indeed is to the contrary. *See id.* at 923 ("A party may present alternative factual theories, and is entitled to instructions supporting all rational inferences the jury might draw from the evidence."). The jury could rationally have drawn from the evidence presented, depending on how credible they deemed Gallegos's testimony in relation to the other evidence presented, that Defendants, collectively, were deliberately ignorant that the object of the smuggling operation was marijuana.

We hold that if the factual predicates of a deliberate ignorance instruction are present, it is not error to give such an instruction. And the theory of deliberate ignorance need not be exclusive, it may be an argument alternative to actual knowledge. Viewing the evidence in the light most favorable to the party requesting the instruction, here the government, the district court's decision to give the deliberate ignorance instruction to the jury was not "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *See Hinkson*, 585 F.3d at 1251.

## III

Defendant Ramos contends that the district court erred in denying his motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. Ramos maintains that the government's evidence was insufficient: In support of that contention, he argues that he made no incriminating statement, that he was not identified in court by Gallegos, that the government only demonstrated that he was present on the beach, and that the government did not prove

that Ramos knew that there were drugs in the panga boat. The government, to the contrary, argues that the evidence was sufficient for the jury to believe that Ramos knew, or was willfully ignorant, of the fact that the smugglers were unloading narcotics. Ramos misunderstands the sufficiency of evidence standard. We construe the evidence "in the light most favorable to the prosecution . . . then determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979)). We are persuaded that the government has the better argument under the standard set forth in *Jackson v. Virginia*.

Ramos argues that his "mere presence" on the beach is insufficient for a conviction for conspiracy or importation, both of which require knowledge. In support, Ramos relies on Gallegos's inability to identify Ramos in court. This argument lacks merit. Gallegos testified that he did not know Ramos, and had only met him on April 3, 2011 at the San Clemente Inn; however, Gallegos did correctly identify Ramos as the only one wearing glasses on the beach. Moreover, Ramos's identity is not in question, as border patrol agents identified him as one of the men arrested on the beach.

Ramos also cites Gallegos's lack of credibility, including his lies to border patrol agents upon arrest, and how Gallegos had been smoking marijuana all day on April 3, 2011. These assertions were raised at trial and rejected by the jury. We will not assume the function of the jury to make credibility determinations. *See Nevils*, 598 F.3d at 1170 ("We cannot second-guess the jury's credibility assessments; rather, 'under

*Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review.'") (quoting *Schlup v. Delo*, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L.Ed.2d 808 (1995)). The jury had the opportunity to weigh Gallegos's use of marijuana and any other credibility factors in their assessment of his testimony.

We view the testimony of the border patrol agents and Gallegos in a light most favorable to the prosecution, as required by *Jackson*. We conclude that a rational jury could believe Gallegos's testimony, conclude that it was consonant with that of the border patrol agents, and conclude beyond a reasonable doubt that Ramos knew, or was deliberately ignorant of, the objective of importing marijuana. *See Nevils*, 598 F.3d at 1169. The district court correctly denied Ramos's Rule 29 motion.

## IV

Defendant-Appellant Sergio Ramos-Atondo contends that the district court abused its discretion when it admitted Ramos-Atondo's prior conviction for alien smuggling under Rule 404(b) of the Federal Rules of Evidence. The government to the contrary contends that Ramos-Atondo waived his right to challenge the admission of his prior conviction because he stipulated to its introduction. Absent waiver, the government maintains that the district court did not err because Ramos-Atondo's alien smuggling conviction was relevant to prove his knowledge, intent, common plan or scheme, and absence of mistake in his participation in a conspiracy to smuggle marijuana. We review a district court's admission of evidence for abuse of discretion. *United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011). Although we reject the government's waiver argument, and address the

propriety of admission of the alien smuggling conviction on its merits, we conclude there was not error under the applicable rules of evidence, and we affirm.

## A

Considering Ramos-Atondo's motion in limine to exclude the alien smuggling conviction, the district court found that evidence of Ramos-Atondo's alien smuggling conviction was not too remote in time because it occurred within the last two years. The district court further found that Ramos-Atondo committed the act since he pleaded guilty to the offense, and that cross-border alien smuggling using a panga boat was sufficiently similar to the marijuana smuggling charge here. In its opposition to Ramos-Atondo's motion, the government urged that the prior alien smuggling conviction was relevant to Ramos-Atondo's knowledge and that it showed that his actions were intentional. At the evidentiary hearing, the district court asked the government further to address whether the prior conviction tended to prove a material point. The government responded that the prior alien smuggling conviction would show that Ramos-Atondo had a plan, and that the use of a panga boat to smuggle is a common scheme that he uses. The government also offered the conviction as evidence that Ramos-Atondo's presence on the panga boat was not a mistake. The district court admitted the prior conviction under Rule 404(b) of the Federal Rules of Evidence, determining that with a limiting instruction, the evidence was not unfairly prejudicial under Rule 403 of the Federal Rules of Evidence, because prejudice did not outweigh probative value.

At trial, the government called two border patrol agents to testify regarding Ramos-Atondo's prior conviction. Agent

Swaine testified that he conducted surveillance on an alien smuggling operation involving 15–20 people and a panga boat, on July 17, 2009. Agent Martinez testified that he interviewed Ramos-Atondo on July 17, 2009, and that Ramos-Atondo said that his role was to load the gasoline on the boat and change nozzles on the gas can during the trip. The record contained the following stipulation:

> Plaintiff United States of America . . . and Defendant Sergio Ramos-Atondo . . . hereby stipulate to the following: On November 16, 2009, Defendant Sergio Ramos-Atondo pleaded guilty to a single-count information charging him with a violation of Title 8, United States Code Section 1324(A)(1)(A)(II) and (B)(2) for bringing in illegal aliens and aiding and abetting in the United States District Court in the Southern District of California.

In her closing argument, the prosecutor referred to Ramos-Atondo's smuggling history. The prosecutor said that Ramos-Atondo admitted to being part of the boat crew in a prior smuggling event, and that this participation demonstrates his intent, motive, plan, and knowledge of how to conduct panga-boat smuggling from Mexico into the United States.

We are not persuaded that Ramos-Atondo waived objection to the introduction of his prior smuggling conviction or the facts underlying that conviction. First, the language of the stipulation is narrow. It refers only to Ramos-Atondo's guilty plea. Second, the stipulation in our view does not mean more than that if the conviction is

admitted, this identifies the prior crime. In the totality of circumstances here, we conclude that Ramos-Atondo did not waive his objection to the admission and use of his prior alien smuggling conviction based on his narrow stipulation about his prior guilty plea. We do not think that this record shows an intentional relinquishment of Ramos-Atondo's right to challenge the admission of evidence. We conclude that there was no waiver, and so the propriety of admitting this prior crime in evidence should be addressed by us on the merits.

## B

Prior crimes are not admissible to show propensity or bad character, but they may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). We employ a four-part test to determine the admissibility of Rule 404(b) evidence:

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.

*United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012). To show relevance under the first prong, "the government must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994) (internal quotation marks and citations omitted). Where the defendant's knowledge is contested, we have

"emphasized that the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." *Id.* at 1181–82. Even if relevant, Rule 404(b) evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403; *United States v. Flores-Blanco*, 623 F.3d 912, 919 (9th Cir. 2010).

Ramos-Atondo contends that the government did not show a clear connection between the prior conviction for alien smuggling and the marijuana smuggling charges. We disagree. The alien smuggling conviction was relevant evidence for several reasons. First, it demonstrated Ramos-Atondo's knowledge of cross-border smuggling procedures, including managing the gas and engine on a panga-style boat as it made its way from Mexico to the United States in the middle of the night. That Ramos-Atondo had previous experience in handling the gas and engine during a smuggling run tends to prove a material point, that Ramos-Atondo was not merely present on the boat with no knowledge of the underlying smuggling operation. Second, the prior conviction further tends to prove the material point that Ramos-Atondo would understand the difference between smuggling aliens and smuggling marijuana, which goes to his knowledge, plan, and intent to smuggle narcotics. *See Flores-Blanco*, 623 F.3d at 919–20 ("[T]he prior acts were sufficiently similar to the present offense to show [defendant's] knowledge of the present smuggling scheme and his intent and plan to participate in it."). Third, the conviction was also relevant to show a *modus operandi* of smuggling involving use of open panga boats that were to be unloaded on a dark beach in early morning hours. *See United*

*States v. Ramirez-Jiminez*, 967 F.2d 1321, 1326 (9th Cir. 1992).

The alien smuggling conviction was not a prior bad act offered to show bad character of Ramos-Atondo. Rather, it was relevant evidence tending to show that what Ramos-Atondo did in this case was illegal, that he was participating in drug smuggling. Even if a district court permissibly could have decided otherwise and excluded the evidence, we conclude that the district court did not abuse its discretion in admitting Ramos-Atondo's prior alien smuggling conviction under Rule 404(b) of the Federal Rules of Evidence. As explained above, there were several logical theories that made the evidence relevant and supported the conclusion that the probative value of the evidence was not outweighed by prejudice from it.

Ramos-Atondo possibly suffered some practical prejudice as a result of admitting evidence of his prior smuggling crime, in the sense that any evidence that tends to show guilt admitted against a defendant charged with crime may cause prejudice because the relevant evidence of guilt increases the likelihood of a conviction. But because of the probative value of the evidence, it was not unfair prejudice that would warrant exclusion under Rule 403 of the Federal Rules of Evidence. *See Flores-Blanco*, 623 F.3d at 920 ("The evidence was probative of [defendant's] knowledge and intent and not of the type that would provoke an unfairly prejudicial emotional response [from the jury]."). Further, any such practical prejudice was minimized by the district court's careful limiting instruction to the jury. *Id.* We conclude that the district court did not abuse its discretion by admitting Ramos-Atondo's prior alien smuggling conviction

under Rule 404(b) and not excluding it under Rule 403 of the Federal Rules of Evidence.

**V**

The district court did not abuse its discretion by instructing the jury on a theory of deliberate ignorance in the context of a conspiracy to import marijuana, did not err in denying Ramos's Rule 29 motion, and did not abuse its discretion by admitting evidence of Ramos-Atondo's prior alien smuggling conviction under Rule 404(b) of the Federal Rules of Evidence.

**AFFIRMED.**