**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-10287 |
| Plaintiff - Appellee, | D.C. No. 2:10-cr-01725-SRB-2 |
| v. | |
| RHONDA MONICA LIDDLE, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted February 11, 2014
San Francisco, California

Before: TALLMAN and RAWLINSON, Circuit Judges, and GARBIS, Senior
District Judge.[**]

Rhonda Liddle appeals her jury trial conviction for conspiracy, federal credit

institution fraud, and transactional money laundering, in violation of 18 U.S.C. §§

2, 371, 1006, and 1957. Rhonda's husband, Willliam Liddle, used his position as

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Marvin J. Garbis, Senior District Judge for the United States District Court for the District of Maryland, sitting by designation.

Vice President of the Business Lending Department of the Arizona Education Association Federal Credit Union (AEA) to approve millions of dollars in questionable business loans to the Liddles' family friends, Frank Ruiz and Dan Thelen. The Liddles received kickback payments in exchange for issuing the loans.

On appeal, Rhonda argues that the evidence adduced at trial was insufficient to prove that she knew the nature of her husband's misconduct, that she intended to further the objects of the conspiracy, or that she knew the kickback funds were derived from illegal activity. She also claims that two jury instructions imposed by the district court unduly confused the jury's deliberation and lowered the government's burden of proof. We have jurisdiction under 28 U.S.C. § 1291, and we affirm Rhonda's conviction.

We review Rhonda's sufficiency of the evidence challenge de novo. *United States v. Rizk*, 660 F.3d 1125, 1134 (9th Cir. 2011). In reviewing the evidence in the light most favorable to the government, we conclude that a rational trier of fact could have found the essential elements of Rhonda's crimes beyond a reasonable doubt. *See United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc).

Rhonda's role in the conspiracy was substantial. Ruiz and Thelen repeatedly, over several years, hand-delivered to Rhonda bank envelopes stuffed with thousands of dollars in $100 bills. Rhonda deposited those payments, along with the cash payments Ruiz and Thelen gave her husband directly, into the Liddles' joint checking account. In 2009, Thelen transferred $575,000 to a trust account the Liddles opened just days earlier. Rhonda withdrew approximately $560,000 from the account and used the proceeds to purchase a new family home. She also personally went to AEA several times to collect funds to pay for a $100,000 remodeling project for the same home.

Rhonda was not an innocent housewife blindly running errands for her husband. Responsible for balancing the family's checkbook, Rhonda had a front-row seat to the family's financial gymnastics. In 2009, for example, the Liddles deposited as much in cash as William earned in salary, while household expenses soared above the family's income. When investigators came knocking, Rhonda acted more savvy than surprised. After being confronted by an FBI agent about handling illicit proceeds from her husband's criminal activity, Rhonda responded, "Are you asking me to choose between my husband of 25 years or talk to the FBI?" Rhonda then quickly co-signed a backdated promissory note that made Thelen's earlier $560,000 wire transfer look like a loan. She delivered the note to

3

Thelen, along with a set of talking points from her husband that appeared to lay out possible defenses to charges of financial wrongdoing.

Based on the combination of Rhonda's active participation in the loan fraud conspiracy, her responsibility over the family's finances, her friendship with the co-conspirators and their wives, and her multiple efforts to obstruct the FBI's investigation, a rational jury could have found that, as to the counts on which she was convicted, she knew the objects of the conspiracy and that she aided and abetted each element of her husband's federal credit institution fraud crimes. *See Nevils*, 598 F.3d at 1163-64. A rational jury could have also found that she knew that the multiple kickback payments she received, deposited, and spent, were derived from her husband's unlawful lending scheme. *See id.*[1]

We also reject Rhonda's jury instruction challenges. Based on the evidence described above, the government demonstrated that Rhonda played a sufficiently substantial role in the fraudulent loan conspiracy to support a *Pinkerton* co-conspirator instruction. *United States v. Bingham*, 653 F.3d 983, 997-98 (9th Cir. 2011). The district court did not abuse its discretion in giving the instruction.

_____

[1] The jury may have alternatively convicted Rhonda of the same counts based on a *Pinkerton* co-conspirator theory of guilt. *See Pinkerton v. United States*, 328 U.S. 640, 646-48 (1946). The evidence adduced at trial was sufficient for a rational jury to convict on this basis.

Nor did the district court abuse its discretion in giving the deliberate ignorance instruction derived from *United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976 (en banc). Rhonda's entire defense was that she lacked actual knowledge of the source of the illegal proceeds she received, deposited, and spent. But "[i]f the jury believed [Rhonda's] position that [she] did not have actual knowledge, then the government's evidence could still support the inference that [she] knew that there was a high probability" that the funds were illegally derived "but deliberately chose not to confirm that suspicion." *United States v. Ramos-Atondo*, 732 F.3d 1113, 1119 (9th Cir. 2013). Even if the government failed to show that Rhonda took deliberate steps to avoid discovering the truth, Rhonda's "failure to investigate can be a deliberate action." *Id.*

We are not convinced that the *Jewell* instruction lowered the government's burden of proof as to Rhonda's *mens rea*.[2] The jury instructions, read as a whole, were neither misleading nor inadequate to guide the jury's deliberation. *See United States v. Garcia–Rivera*, 353 F.3d 788, 792 (9th Cir. 2003).

---

[2] Rhonda raises this specific argument for the first time on appeal. We thus review it for plain error. *United States v. Klinger*, 128 F.3d 705, 711 (9th Cir. 1997). Even if the district court erred by not limiting the *Jewell* instruction to the transactional money laundering counts, the error was not so obvious as to be plain. *Id.* at 712; *see also Ramos-Atondo*, 732 F.3d at 1120 (affirming the use of a *Jewell* instruction as to a conspiracy charge).

AFFIRMED.