

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-10286 |
| Plaintiff - Appellee, | D.C. No. 13-cr-01161-CKJ |
| v. | |
| ANGELA MARIE EWING, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted May 10, 2016
San Francisco, California

Before: IKUTA and WATFORD, Circuit Judges, and WATSON, District Judge.**

Angela Marie Ewing appeals her jury conviction and sentence for

(1) conspiracy to possess with the intent to distribute heroin and

methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846;

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\* The Honorable Derrick Kahala Watson, District Judge for the U.S. District Court for the District of Hawaii, sitting by designation.

(2) possession with the intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (3) possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (4) conspiracy to import heroin and methamphetamine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(3), and 963; (5) importation of heroin, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(3); and (6) importation of methamphetamine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(3). We have jurisdiction under 28 U.S.C. § 1291. We affirm.

1. Sufficient evidence supported Ewing's conviction. Viewing the facts in the light most favorable to the government, *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (*en banc*), Ewing admitted to knowingly agreeing to work for a drug trafficking organization that imported drugs from Mexico into the United States, that the money she agreed to conceal and transport across the Mexico-United States border was generated from the sale of these imported drugs, and that her concerted activity with others, including her co-Defendant Reyna Macias, was illegal. Her agreement to participate in the drug trafficking conspiracy in this fashion rendered her guilty of activities beyond those that she specifically agreed to carry out herself—including those involving the heroin and methamphetamine concealed in the door panels of the vehicle in which she crossed

2

the border on June 7, 2013.  *See Ocasio v. United States*, 136 S. Ct. 1423, 1429-30 (2016) ("The government does not have to prove that the defendant intended to commit the underlying offense himself/herself.  Instead, if conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators") (citations, quotations, signals and some alterations omitted).  Even assuming that Ewing did not expressly agree to undertake all of the acts underlying the charged offenses, she is no less "a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense." *Salinas v. United States*, 522 U.S. 52, 65 (1997).  Accordingly, "*any* rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." *Nevils*, 598 F.3d at 1163-64 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

2.  The district court did not abuse its discretion in formulating the jury instructions on conspiracy.  *See United States v. Woodley*, 9 F.3d 774, 780 (9th Cir. 1993).  "A trial court is given substantial latitude in tailoring jury instructions so long as they fairly and adequately cover the issues presented." *United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir. 1991) (internal quotation marks omitted).  The instructions here, taken as a whole, were neither misleading nor inadequate to guide the jury's deliberations.  *Id.*

3

We review *de novo* the denial of a jury instruction based on a question of law, including whether the instructions adequately cover a defendant's theory of defense. *United States v. Duran*, 59 F.3d 938, 941 (9th Cir. 1995). The jury was properly instructed on the elements of conspiracy, and the district court's failure to give Ewing's theory-of-the-defense instruction was not error, where the instructions, in their entirety, fairly and adequately covered the defense theory. *See id.* (citing *United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir. 1990), *overruled on other grounds by Dixon v. United States*, 548 U.S. 1 (2006)).

3. The district court did not abuse its discretion by instructing the jury on deliberate ignorance. The factual predicates for the instruction were satisfied and the instruction as given accurately stated the law. *See United States v. Heredia*, 483 F.3d 913, 921-22 (9th Cir. 2007) (*en banc*) (holding that whether to give a deliberate ignorance instruction is reviewed for abuse of discretion, and the sufficiency of the supporting evidence is considered in the light most favorable to the requesting party). The government introduced sufficient evidence from which a reasonable jury could infer that Ewing was aware of a high probability that she was in possession of drug contraband and that her failure to investigate was a deliberate action taken to avoid learning the truth. Notably, a reasonable juror could have found beyond a reasonable doubt that the questionable series of events

4

at the Arizona Mills Mall in Phoenix where vehicles were swapped to "fix" an unidentified problem, in the midst of rapid border crossings during a short period of time, made defendant aware of a high probability that drugs were in the car. Yet, at no point did Ewing inquire about the exchange of the Chevrolet Malibu for the Ford Focus, the request to put the title of the vehicle into her name, the possibility of needing to get a police report from the car dealership, the use of her cell phone by Macias to send text messages, or the myriad other unusual events during the relevant time period. Under the totality of these circumstances, a jury could reasonably conclude that her failure to inquire or investigate constitutes deliberate ignorance. *See United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976) (*en banc*).

Nor did the district court commit legal error in the formulation of the deliberate ignorance instruction. *See United States v. Ramos-Atondo*, 732 F.3d 1113, 1119 (9th Cir. 2013) ("Deliberate ignorance involves '(1) a subjective belief that there is a high probability a fact exists and (2) deliberate actions taken to avoid learning the truth.'") (quoting *United States v. Yi*, 704 F.3d 800, 804 (9th Cir. 2013)); Ninth Circuit Model Instr. 5.7. Because the conspiracy and deliberate ignorance instructions together covered her theory of the case, it was not error to exclude Ewing's proposed deliberate ignorance instruction.

4. The district court did not abuse its discretion in admitting evidence of Ewing's border crossing history. The trial court weighed the prejudicial effect of this evidence against its probative value, pursuant to Federal Rule of Evidence 403, and we cannot say that its admission of this evidence constituted a discretionary abuse. *Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2012).

Nor did the district court err in admitting the testimony of the case agent over Ewing's Rule 704 objection. The district court properly concluded that the agent's testimony recounting his interview of Ewing was merely descriptive of what transpired and did not constitute improper opinion testimony. Morever, the district court's decision to give a curative instruction, drafted with input from all counsel, left little room for confusion, and there is no indication that the jury was unable to follow the court's instruction. *See Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir. 2000); *United States v. Sanchez-Robles*, 927 F.2d 1070, 1077 (9th Cir. 1991).

5. Because Ewing failed to object at trial, we review her claims of prosecutorial misconduct during closing arguments for plain error. *See United States v. Moreland*, 622 F.3d 1147, 1158 (9th Cir. 2010). "Under the plain error standard, relief is not warranted unless there has been: (1) 'error,' (2) that was 'plain,' (3) that affected 'substantial rights,' and (4) that 'seriously affected the

6

fairness, integrity, or public reputation of the judicial proceedings.'" *Id*. (quoting *United States v. Recio*, 371 F.3d 1093, 1100 (9th Cir. 2004)). Ewing's contention that the government's closing statement denied her due process right to a fair trial—because it made arguments that had no foundation in evidence, required inferences that were unreasonable, appealed to jurors' concern about crime in their community, and again raised the case agent's opinion testimony—does not withstand scrutiny. On plain error review, none of the statements amounts to improper conduct that "so affected the jury's ability to consider the totality of the evidence fairly that it tainted the verdict and deprived [Ewing] of a fair trial." *United States v. Weatherspoon*, 410 F.3d 1142, 1151 (9th Cir. 2005).

6. The district court did not clearly err in sentencing by denying a three-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. *See United States v. Fleming*, 215 F.3d 930, 939 (9th Cir. 2000) ("We review for clear error a district court's decision to deny a reduction for acceptance of responsibility."). Throughout, including sentencing, Ewing steadfastly denied her knowledge of the secreted drugs. Accordingly, the trial court did not clearly err in finding the absence of an acceptance of responsibility and in withholding the adjustment under Section 3E1.1. *See United States v. Johal*, 428 F.3d 823, 830

7

(9th Cir. 2005) ("[T]he reduction is inappropriate where the defendant does not admit that he or she had the intent to commit the crime.").

The judgment of conviction and the sentence are **AFFIRMED**.

*United States v. Ewing*, No. 14-10286

WATFORD, Circuit Judge, dissenting:

I would reverse Ewing's convictions. Each of the offenses alleged against her required the government to prove that she knew drugs were hidden in the car on June 7, 2013, when Ewing and Macias attempted to re-enter the United States from Mexico. The government presented no evidence from which a jury could rationally conclude that Ewing had actual knowledge that drugs were present in the car; the narcotics were skillfully concealed in hidden compartments in the car's rocker panels and were detected only with the aid of a drug-detection dog and a "density buster" meter. In the past we've allowed juries to infer knowledge when the defendant was the driver and sole occupant of a car, *see United States v. Diaz-Cardenas*, 351 F.3d 404, 407 (9th Cir. 2003), but here Ewing was only a passenger in the Malibu, which was driven by and registered to Macias. So the government was forced to rely on a theory of "deliberate ignorance," which required it to prove that Ewing was aware of a high probability drugs were hidden inside the car and that she deliberately avoided learning the truth. *See United States v. Heredia*, 483 F.3d 913, 917, 920, 924 (9th Cir. 2007) (en banc); *United States v. Jewell*, 532 F.2d 697, 699–701, 703–04 (9th Cir. 1976) (en banc).

The government introduced insufficient evidence to support its deliberate ignorance theory. The government introduced plenty of evidence from which the

jury could infer that Ewing knew the car had hidden compartments, and that she knew cash derived from drug sales had been hidden in those compartments when she and Macias drove the car from Phoenix to Mexico on June 5. Ewing admitted to that. She further admitted knowing that the people to whom they delivered the car in Mexico were drug traffickers. What the government did not prove, however, was Ewing's awareness of facts that made it highly probable drugs had been loaded into the car's hidden compartments for the return trip back to Phoenix on June 7.

In fact, the government introduced no evidence of what happened to the car after Ewing and Macias dropped it off in Mexico. (All of the facts mentioned by the majority, *see* Memdispo at 4–5, concern the cash-smuggling activities that occurred back in Phoenix, which Ewing admitted having knowledge of.) The government did not prove, for example, that when Ewing and Macias delivered the car to the drug traffickers so that the cash could be extracted, they saw drugs present in the garage when they left the vehicle but then returned several hours later to retrieve the car and noticed that the drugs were gone. Nor did the government attempt to establish that there was anything about the car—a strong and unusual odor, for example—that would have tipped off its occupants to the presence of drugs hidden inside. Those are facts from which a jury could

rationally infer that Ewing was aware of a high probability drugs had been hidden in the car. That's the kind of evidence our cases require to support drug-trafficking convictions on a deliberate ignorance theory. *See, e.g.*, *United States v. Ramos-Atondo*, 732 F.3d 1113, 1119–20 (9th Cir. 2013); *Heredia*, 483 F.3d at 923–24; *United States v. Bobadilla-Lopez*, 954 F.2d 519, 523 (9th Cir. 1992); *United States v. Perez-Padilla*, 846 F.2d 1182, 1183 (9th Cir. 1988) (per curiam); *Jewell*, 532 F.2d at 699 & n.2. We have never upheld a drug-trafficking conviction on a deliberate ignorance theory with evidence this thin.

Rather than present adequate evidence to the jury from which rational inferences could be drawn, the government offered us this argument on appeal: *Everybody* knows that drug traffickers, being the profit-maximizers that they are, would never smuggle cash into Mexico by car but then leave the car empty for the return trip to the United States. Does everybody really know that? Drug traffickers' smuggling techniques are hardly matters of common knowledge. For all we know, drug traffickers operating out of Mexico use cars to transport drug proceeds from the United States into Mexico because the risk that cash will be detected at the border on the way out is relatively low. But perhaps the risk that drugs will be detected at the border on the way into the United States is much higher, such that drug traffickers typically smuggle drugs into the United States by

other means—tunnels, planes, panga boats, etc. I don't know where the truth lies on that score, and I'm not sure how the jury was supposed to know either, since the government didn't even put on an expert from the DEA to educate the jury about the smuggling practices drug traffickers typically use.

In short, I don't think the government presented a shred of proof to establish that Mexican drug traffickers always use the same cars to smuggle drugs into the United States that they use to smuggle cash into Mexico, much less that everybody knows that's how things work. And since the government put on no evidence to establish that Ewing became aware of facts making it highly probable the particular car in which she was riding would be used in that fashion, the government necessarily failed to carry its burden of proof here.