WATFORD, Circuit Judge,
dissenting:
I would reverse Ewing’s convictions. Each of the offenses alleged against her required the government to prove that she knew drugs were hidden in the car on June 7, 2013, when Ewing and Macias attempted to re-enter the United States from Mexico.' The government presented no evidence from which a jury could rationally conclude that Ewing had actual knowledge that drugs were present in the car; the narcotics were skillfully concealed in hidden compartments in the car’s rocker panels and were detected only with the aid of a drug-detection dog and a “density *924 buster” meter. In the past we’ve allowed juries to infer knowledge when the defendant was the driver and sole occupant of a car, see United States v. Diaz-Cardenas, 351 F.3d 404, 407 (9th Cir. 2003), but here Ewing was only a passenger in the Malibu, which was driven by and registered to Macias. So that Ewing was aware of a high probability drugs the government was forced to rely on a theory of “deliberate ignorance,” which required it to prove were hidden inside the car and that she deliberately avoided learning the truth. See United States v. Heredia, 483 F.3d 913, 917, 920, 924 (9th Cir. 2007) (en banc); United States v. Jewell, 532 F.2d 697, 699-701, 703-04 (9th Cir. 1976) (en banc).
The government introduced insufficient evidence to support its deliberate ignorance theory. The government introduced plenty of evidence from which the jury could infer that Ewing knew the car had hidden compartments, and that she knew cash derived from drug sales had been hidden in those compartments when she and Macias drove the car from Phoenix to Mexico on June 5. Ewing admitted to that. She further admitted knowing that the people to whom they delivered the car in Mexico were drug traffickers. What the government did not prove, however, was Ewing’s awareness of facts that made it highly probable drugs had been loaded into the car’s hidden compartments for the return trip back to Phoenix on June 7.
In fact, the government introduced no evidence of what happened to the car after Ewing and Macias dropped it off in Mexico. (All of the facts mentioned by the majority, see Memdispo at 4-5, concern the cash-smuggling activities that occurred back in Phoenix, which Ewing admitted having knowledge of.) The government did not prove, for example, that when Ewing and Macias delivered the car to the drug traffickers so that the cash could be extracted, they saw drugs present in the garage when they left the vehicle but then returned several hours later to retrieve the car and noticed that the drugs were gone. Nor did the government attempt to establish that there was anything about the car — a strong and unusual odor, for example — that would have tipped off its occupants to the presence of drugs hidden inside. Those are facts from which a jury could rationally infer that Ewing was aware of á high probability drügs had been hidden in the car. That’s the kind of evidence our cases require to support drug-trafficking convictions on a deliberate ignorance theory. See, e.g., United States v. Ramos-Atondo, 732 F.3d 1113, 1119-20 (9th Cir. 2013); Heredia, 483 F.3d at 923-24; United States v. Bobadilla-Lopez, 954 F.2d 519, 523 (9th Cir. 1992); United States v. Perez-Padilla, 846 F.2d 1182, 1183 (9th Cir. 1988) (per curiam); Jewell, 532 F.2d at 699 & n. 2. We have never upheld a drug-trafficking conviction on a deliberate ignorance theory with evidence this thin.
Rather than present adequate evidence to the jury from which rational inferences could be drawn, the government offered us this argument on appeal: Everybody knows that drug traffickers, being the profit-maximizers that they are, would never smuggle cash into Mexico by car but then leave the car empty for the return trip to the United States. Does everybody really know that? Drug traffickers’ smuggling techniques are hardly matters of common knowledge. For all we know, drug traffickers operating out of Mexico use cars to transport drug proceeds from the United States into Mexico because the risk that cash will be detected at the border on the way out is relatively low. But perhaps the risk that drugs will be detected at the border on the way into the United States is much higher, such that drug traffickers typically smuggle drugs into the United States by other means — tunnels, planes, panga boats, etc. I don’t know where the *925 truth lies on that score, and I’m not sure how the jury was supposed to know either, since the government didn’t even put on an expert from the DEA to educate the jury about the smuggling practices drug traffickers typically use.
In short, I don’t think the government presented a shred of proof to establish that Mexican drug traffickers always use the same cars to smuggle drugs into the United States that they use to smuggle cash into Mexico, much less that everybody knows that’s how things work. And since the government put on no evidence to establish that Ewing became aware of facts making it highly probable the particular car in which she was riding would be used in that fashion, the government necessarily failed to carry its burden of proof here.