**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 19 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-10270 |
| Plaintiff-Appellee, | D.C. No. 5:15-cr-00264-LHK-1 |
| v. | |
| JOSEPH SHAYOTA, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-10271 |
| Plaintiff-Appellee, | D.C. No. 5:15-cr-00264-LHK-2 |
| v. | |
| ADRIANA SHAYOTA, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted February 14, 2019
San Francisco, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: SCHROEDER, O'SCANNLAIN, and RAWLINSON, Circuit Judges.

Based on their involvement in a scheme to manufacture and to distribute large quantities of counterfeit 5-Hour Energy, Joseph and Adriana Shayota were convicted at trial of conspiracy to traffic in counterfeit goods, *see* 18 U.S.C. § 2320(a), and conspiracy to commit copyright infringement and to introduce misbranded food into interstate commerce, *see* 17 U.S.C. § 506, 18 U.S.C. § 2319, and 21 U.S.C. §§ 331 and 333. On appeal, the Shayotas challenge their convictions on numerous grounds.[2] Because the facts are known to the parties, we repeat them only as necessary to explain our decision.

## I

The Shayotas jointly raise four challenges to their convictions.

## A

First, they argue that the court abused its discretion by admitting the former testimony of two co-conspirators, Walid Jamil and Leslie Roman, who were deposed during a civil suit brought by the manufacturer of 5-Hour Energy against the Shayotas for copyright and trademark infringement. Because Jamil and Roman invoked their

---

[2] The "unavailability" issue under the Confrontation Clause is treated in an opinion issued concurrently with this memorandum disposition. *See United States v. Shayota*, Nos. 17-10270 & 17-10271, – F.3d – (9th Cir. 2019).

Fifth Amendment privilege against self-incrimination and refused to testify during the Shayotas' subsequent criminal trial, the government offered portions of their deposition testimony into evidence under Federal Rule of Evidence 804. Such rule permits the use of former testimony by a witness who has validly invoked a testimonial privilege so long as the party against whom the testimony is offered had "an opportunity and similar motive to develop it" by cross-examination. *See id.* The Shayotas argue that admitting the depositions was error because they claim that they did not have a "similar motive" to develop the testimony.

"Similar motive does not mean identical motive." *United States v. McFall*, 558 F.3d 951, 963 (9th Cir. 2009) (internal quotation marks omitted). Rather, the key inquiry is whether the party's "fundamental objective" was the same in both proceedings. *Id.* Because the Shayotas faced increased penalties in the civil suit for willful trademark infringement under the Lanham Act, one of their fundamental objectives in the civil suit was to demonstrate lack of knowledge and lack of intent to infringe on 5-Hour Energy's registered trademarks. Similarly, in the criminal trial, the Shayotas shared the fundamental objective of casting doubt on the government's proof regarding their knowledge of the re-labeling conspiracy. The Shayotas' motives in both proceedings were therefore sufficiently similar under Rule 804(b). The district court did not abuse its discretion as to the "similar motive" issue.

3

B

The Shayotas next contend that the court abused its discretion by excluding extrinsic evidence of a prior tax fraud investigation involving Jamil under Federal Rule of Evidence 608(b). But the district court offered a second basis for its ruling, explaining that "Rule 403 . . . provides an independent ground for excluding the evidence." The Shayotas failed to appeal the court's alternative ruling, and such ruling was not an abuse of discretion: the Shayotas had the opportunity to read aloud to the jury a stipulation regarding Jamil's tax fraud investigation, or to read into the record portions of his deposition testimony in which he was cross-examined on such investigation. Any additional extrinsic evidence would have been needlessly cumulative and a waste of time. *See* Fed. R. Evid. 403.

C

The Shayotas also challenge the admission of portions of their redacted depositions, arguing that such redactions were insufficient under *Gray v. Maryland*, 523 U.S. 185 (1998), and that admission of the testimony therefore violated *Bruton v. United States*, 391 U.S. 123 (1968). But neither Joseph nor Adriana objected to the redactions at trial. Indeed, the Shayotas and the government conferred about such redactions and filed a joint statement with the court averring that they had "resolved any areas of disagreement" regarding the depositions. Consequently, under the

4

invited error doctrine, the Shayotas have waived their rights to challenge such redactions on appeal. *See United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc) ("If the defendant has both invited the error, and relinquished a known right, then the error is waived and therefore unreviewable."); *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1187 (9th Cir. 1992) ("[A] defendant who elicits a statement that may be violative of *Bruton* may not later claim error based on the admission of that statement.").

D

Finally, the Shayotas argue that the district court erred by giving a deliberate ignorance jury instruction. An instruction on deliberate ignorance is appropriate where a defendant claims to have no positive knowledge of illegal activity, but the evidence shows that she deliberately chose to avoid learning of the illicit nature of her acts. *United States v. Jewell*, 532 F.2d 697, 703–04 (9th Cir. 1976) (en banc). The Shayotas claim that the instruction was given in error because there was no evidence that they were deliberately ignorant. But the record belies their assertion. Despite their exposure to numerous suspicious aspects of the scheme, the Shayotas continued to participate, selling the counterfeit 5-Hour Energy to distributors and retailers around the country. The district court's instruction was proper. *See United States v.*

*Ramos-Atondo*, 732 F.3d 1113, 1120 (9th Cir. 2013); *United States v. Nicholson*, 677 F.2d 706, 711 (9th Cir. 1982).

II

Adriana Shayota raises two additional challenges to her convictions.

A

First, she argues that insufficient evidence supported her convictions because she claims that the government failed to prove that she knowingly participated in the conspiracies. We are not persuaded.

Adriana was exposed to the scheme from its inception. Because she owned Baja Exporting and handled its finances, she processed and paid invoices for 5-Hour Energy even after Baja terminated its relationship with the manufacturer. Such invoices included payments for "trucking labels, supplies, ink for rest of orders"—items that would have been useful in creating and distributing Baja's own counterfeit version of the drink. Adriana also admitted that she prepared a spreadsheet for Jamil that reflected payments for "equipment" and that she occasionally dealt in cash for 5-Hour Energy deliveries. Finally, after Adriana discovered that 5-Hour Energy's manufacturer was suing the Shayotas' associates for copyright infringement relating to the counterfeit 5-Hour Energy sales, Adriana transferred $2 million from Baja's account to a separate account over which Adriana had signatory authority.

Adriana claims that there are innocent explanations for much of this evidence, but the jury was not required to credit her version of events over the testimony of other credible witnesses that tended to support her guilt. Adriana's extensive involvement in the company, her handling of invoices and spreadsheets that listed ink and equipment, and the suspicious timing of her $2 million transfer together support an inference that Adriana was aware that Baja was trading in counterfeit goods and demonstrate her consciousness of guilt. Viewing the evidence in the light most favorable to the jury's verdict, a reasonable juror could have concluded that Adriana conspired to traffic in counterfeit goods and to commit criminal copyright infringement. *See United States v. Ortega*, 203 F.3d 675, 683 (9th Cir. 2000) ("A conspiracy may be proven by circumstantial evidence."); *United States v. Grasso*, 724 F.3d 1077, 1086 (9th Cir. 2013) (A defendant's connection to the conspiracy need only be "slight.").

## B

Finally, Adriana argues that her trial counsel was ineffective by failing to interview and to call an exculpatory witness—attorney Gregory Vega—with whom Adriana consulted before she made the $2 million transfer. According to Adriana, Vega would have testified that he advised Adriana that she could lawfully transfer money out of Baja's account in the absence of an asset freeze or a court order

prohibiting distributions from the account. Because the government relied on the $2 million transfer as evidence of Adriana's consciousness of guilt, she argues that the absence of Vega's testimony was prejudicial: without it, she says, the jury was left with the impression that she had an illicit purpose for transferring the funds.

Adriana's ineffective-assistance-of-counsel claim fails because the failure to call Vega as a witness was not prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 693, 697 (1984). Vega's testimony merely established that Adriana knew she was not committing a crime by transferring funds out of Baja's account. But such testimony has no bearing on Adriana's *motivation* for transferring the funds. Even if the testimony had been offered, the jury still could have concluded that she transferred the funds in an effort to drain the account of the illicit fruits of the conspiracy. The absence of Vega's testimony therefore does not create a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

**AFFIRMED.**



***United States v. Shayota*, Case Nos. 17-10270 and 17-10271**
**Rawlinson, Circuit Judge, concurring:**

I concur in the result.