
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT [1]

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> ALBERT DIROBERTO, aka Al Diro, aka Albert Robert DiRoberto, <br><br> Defendant-Appellant. | No.   15-50437 <br><br> D.C. No. <br> 5:12-cr-00065-VAP-11 <br><br><br> MEMORANDUM[*] |
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> CRYSTAL TAIWANA BUCK, <br><br> Defendant-Appellant. | No.   15-50438 <br><br> D.C. No. <br> 5:12-cr-00065-VAP-4 |

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted February 7, 2017
Pasadena, California

Before: THOMAS, Chief Judge, NGUYEN, Circuit Judge, and AMON, District Judge.**

Crystal Buck was convicted after a jury trial of wire fraud charges under 18 U.S.C. § 1343 in connection with 21st Century's telemarketing scheme that targeted distressed homeowners. Albert DiRoberto was convicted of both mail and wire fraud charges under 18 U.S.C. §§ 1341 and 1343 in the same scheme. Both argue that the government's evidence was insufficient to establish their intent to defraud, a necessary element of the charges of which they were convicted. DiRoberto additionally challenges two of the district court's jury instructions, a number of evidentiary rulings, the calculation of the sentencing guidelines, and the district court's order of restitution. Because we find no error in the district court's rulings, we affirm.

**I. Sufficiency of the Evidence.** We review a district court's denial of a motion made pursuant to Rule 29 of the Federal Rules of Criminal Procedure de novo. United States v. Wiggan, 700 F.3d 1204, 1210 (9th Cir. 2012). In evaluating sufficiency of the evidence claims, we must determine whether, after viewing the evidence "in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Circuit Rule 36-3.

\*\* The Honorable Carol Bagley Amon, District Judge, United States District Court for the Eastern District of New York, sitting by designation.

reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). That standard is easily met here.

"Fraudulent intent may be, and often must be, proven by circumstantial evidence." United States v. Rasheed, 663 F.2d 843, 848 (9th Cir. 1981). "Intent may be inferred from misrepresentations made by the defendant[], and the scheme itself may be probative circumstantial evidence of an intent to defraud." United States v. Sullivan, 522 F.3d 967, 974 (9th Cir. 2008) (citation omitted). Intent also may be proven by acts that were subsequent to the actions at issue. See Benchwick v. United States, 297 F.2d 330, 336 (9th Cir. 1961).

The evidence at trial established that Buck knowingly made false statements to the victim to induce her to pay fees to 21st Century to obtain a modification of her loan payments. Those included claims that Buck had obtained a loan modification for her own parents; that the victim would receive a full refund of her fees if she did not obtain a successful modification; that 21st Century was operating under a government program implemented by President Obama; and that it would take ninety days to obtain the loan modification. Buck made similar misrepresentations to other 21st Century customers. The evidence further established that after Buck was expressly warned by 21st Century in April 2009 that certain representations she had been making were false, she continued to make false promises and misrepresentations to customers.

Evidence as to DiRoberto was similar.  He falsely told one victim that he was an attorney and the owner of 21st Century; that he worked with other attorneys at the company; that the victim was prequalified to obtain a loan modification; and that the victim would receive a full refund of her fees if 21st Century did not secure her modification.  DiRoberto made similar false promises to other victims, and as 21st Century's marketing director, he disseminated false information among employees and on the internet.  The circumstances were such that he would have had to have known that the representations he was making were false, particularly in light of his knowledge that 21st Century was a disorganized and understaffed operation.

**II.  Jury Instructions.**  DiRoberto challenges on appeal two jury instructions that he stipulated to below.  The government makes a compelling argument that he waived any challenge to those instructions.  We need not resolve that issue here since his challenges in any event do not survive plain error review.

**1. Knowledge of Illegality.**  If a criminal statute penalizes "willful" conduct, proof will ordinarily be required that a defendant acted with knowledge that his conduct was illegal.   See Bryan v. United States, 524 U.S. 184, 191–92 (1998).  Unless the text of a statute dictates a different result, "knowingly" merely requires proof of a knowledge of the facts that constitute the offense rather than proof of knowledge that the acts were illegal.  See id. at 192–93.  The mail and wire fraud

4

statutes do not require proof of willfulness. 18 U.S.C. §§ 1341, 1343.

Accordingly, the district court's instruction that DiRoberto did not need to know his actions were illegal was not erroneous.

**2. Deliberate Ignorance.** The district court also did not err in charging on deliberate ignorance, referred to as a Jewell instruction. United States v. Jewell, 532 F.2d 697 (9th Cir. 1976) (en banc). DiRoberto argues that the instruction was inappropriate, because "[n]o evidence showed . . . DiRoberto suspected his statements were false and intentionally refused to determine their truth," and "the government's theory was that . . . DiRoberto actually knew his statements were false." The government acknowledges that its theory at trial was that DiRoberto knew that he was engaging in fraud. However, the government's failure to present a deliberate ignorance theory is not an automatic bar to a Jewell instruction. The district court retains the discretion to include the charge. See United States v. Heredia, 483 F.3d 913, 921–22 (9th Cir. 2007) (en banc). "In deciding whether to give a willful blindness instruction, in addition to an actual knowledge instruction, the district court must determine whether the jury could rationally find willful blindness even though it has rejected the government's evidence of actual knowledge." Id. at 922.

Deliberately acting to avoid learning the truth includes a "failure to investigate" where a defendant is aware of a "high probability" of the underlying

5

fact. Id. at 920 & n.10. Abundant evidence was presented upon which a reasonable juror could have concluded that even if DiRoberto did not know for certain that 21st Century was a fraudulent operation, he failed to investigate while being aware of a high probability that representations he made about the company were false. For example, DiRoberto distributed marketing materials and responded to negative publicity based, in part, on information provided to him from others, without determining whether that information was true. He knew that 21st Century only had "hologram" attorneys and that 21st Century was hiring "street thugs." He knew that there was a "huge void" in customer service; that there was no customer service department; that there was no process in place for responding to complaints; and that customer complaints went unattended because they were routed to "closers" who had an incentive to ignore the complaints because they were paid solely by commissions. He also knew that the company was under investigation by multiple attorneys general. Deliberate ignorance could be inferred from this evidence.

**III. Evidentiary Rulings.** We review the district court's non-constitutional evidentiary rulings for abuse of discretion, and reversal is appropriate only if the error "more likely than not affected the verdict." See United States v. Decoud, 456 F.3d 996, 1010 (9th Cir. 2006) (citations omitted). We also review the propriety of a sanction for violating Rule 16 of the Federal Rules of Criminal Procedure for an abuse of discretion. United States v. Aceves-Rosales, 832 F.2d 1155, 1156 (9th Cir. 1987).

**1. Exclusion of Documentary Evidence.** To support his claim that he believed 21st Century to be a legitimate operation, DiRoberto sought to admit into evidence two exhibits, which he claimed were given to him by his superior and which purported to show that 21st Century had successfully obtained loan modifications for customers. The district court excluded the exhibits because the defendant had failed to provide them to the government in discovery.

"Exclusion of [evidence] as a sanction for a violation of a discovery rule in a criminal trial is generally appropriate only in cases involving 'willful and blatant' violations." United States v. Verduzco, 373 F.3d 1022, 1033 (9th Cir. 2004) (quotation marks omitted). Here, that standard was met. The first time the government was shown these exhibits was when DiRoberto's counsel sought to introduce them into evidence at trial. This is despite the fact that the documents in the exhibits had been in DiRoberto's counsel's possession at least one or two days

7

prior to that time and had been in DiRoberto's possession for much longer. The failure to provide the documents to the government was not inadvertent. DiRoberto's counsel admitted that he made a tactical choice to not disclose the documents to the government earlier because "if [he] didn't call [his] client, [he] wasn't going to use [them]." That uncertainty does not excuse a belated production. For these reasons, exclusion of the evidence was proper. See Aceves-Rosales, 832 F.2d at 1156–57 (finding that the district court did not abuse its discretion in excluding defendant's proposed medical record exhibit when defense counsel had acquired the record a day before trial and waited until after the prosecution rested to disclose its existence).

Moreover, any error in excluding these documents was harmless. DiRoberto was permitted to testify that he was shown and relied on these documents, and the government never challenged this aspect of his testimony.

**2. Precluding Evidence of Bank Misconduct.** In ruling on the government's in limine motion, the district court precluded "inquiry or argument" about the role of lending institutions in creating an increase in the number of homeowners facing foreclosures and the causes for the failures of these institutions to fund or approve loan modifications. DiRoberto argues that this ruling precluded him from offering evidence of the banks' misconduct to support a purported "good faith" defense. This argument fails for two reasons. First,

8

DiRoberto never proffered to the district court the evidence he wished to offer to support this defense. Indeed, he fails even on appeal to identify such evidence. Second, the district court did not abuse its discretion in determining that evidence on these issues was largely irrelevant to the charges DiRoberto faced. The causes for lending institutions to deny loan modification applications were not relevant to whether DiRoberto lied when he promised customers that their loan modifications would be secured and certainly not relevant to misrepresentations that he was an attorney and working as part of a government program, or to his false claim that his customers were pre-approved to obtain their modifications. Furthermore, DiRoberto incorrectly asserts that he was precluded from presenting evidence to explain "the low number of modifications" or that an "outside force" prevented 21st Century from obtaining loan modifications. However, DiRoberto acknowledges, as he must, that the district court permitted evidence of the lending institutions' delays in processing loan modification applications. Accordingly, for all of these reasons, the district court's ruling was not erroneous.

**3. Evidence of Victims' Losses of Their Homes.** We also conclude that the district court did not abuse its discretion in admitting evidence that four victims of 21st Century's fraudulent scheme lost their homes. The evidence was relevant to show that the representations made by DiRoberto to victims that they were prequalified for loan modifications and that they were guaranteed specific

9

modification terms were both false and material.  The victims accepted and believed these misrepresentations because they were desperate to prevent the loss of their homes, which ultimately came to pass.  See Farrell v. United States, 321 F.2d 409, 419 (9th Cir. 1963) ("[T]he effect of the solicitations upon the recipients is a highly pertinent fact in determining whether the solicitations are of the nature charged.  The tendency of the form to mislead is shown by testimony that it did mislead." (citations omitted)).  Moreover, the limited nature of the testimony and the sparse references made to it in closing argument undermine any concern that its "probative value" was "substantially outweighed by a danger of unfair prejudice" under Federal Rule of Evidence 403.[1]

**IV.  Sentencing.**  Claims of procedural error in sentencing decisions are reviewed for abuse of discretion.  United States v. Valencia-Barragan, 608 F.3d 1103, 1108 (9th Cir. 2010).  Factual findings underlying the district court's determination are reviewed for clear error.  United States v. Montano, 250 F.3d 709, 712 (9th Cir. 2001).

**1. Loss Calculation.**  In applying U.S.S.G. § 1B1.3(a)(1)(A), the district court properly held DiRoberto accountable for the full loss amount to all the victims of 21st Century's fraudulent scheme during DiRoberto's tenure.   Under that guideline, defendants are held responsible at sentencing for all "acts and

---

[1] Because the district court committed no evidentiary errors, DiRoberto's claim that "cumulative error infected the trial" is moot.

omissions" that they "aided." U.S.S.G. § 1B1.3(a)(1)(A). When the offenses involve "a jointly undertaken criminal activity," defendants are held responsible for "all acts and omissions of others that were . . . in furtherance of . . . and reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). DiRoberto's acquittal on the conspiracy charge does not alter this result. It is well-settled that in making this determination, "a sentencing court may consider conduct of which a defendant has been acquitted." United States v. Watts, 519 U.S. 148, 154 (1997). "[A]cquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." United States v. One Assortment of 89 Firearms, 465 U.S. 354, 361 (1984).

At the sentencing hearing, the district court found that the "most compelling thing about [DiRoberto's] role in the company [was] his work on the marketing materials." The court noted that the marketing materials contained falsehoods, that DiRoberto developed scripts that employees used when they were responding to the complaints from customers whose files were not being processed and nothing was being done, and that DiRoberto had "a pretty deep awareness of the problems and the fraud that was being perpetrated." All of these findings of the district court were supported by the evidence presented at trial. For these reasons, the district court correctly found that the actions of other employees that directly led to the losses of all of the victims of 21st Century during DiRoberto's tenure at the

11

company constituted acts and omissions that were "reasonably foreseeable in connection with [jointly undertaken] criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

**2. Enhancement under Section 2B1.1(b)(9)(A).** We also find that the district court did not err in applying a 2-level enhancement under U.S.S.G. § 2B1.1(b)(9)(A). Section 2B1.1(b)(9)(A) states, in relevant part, "If the offense involved . . . a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency . . . increase by 2 levels." Simply alluding to a relationship with government agencies and offices can be sufficient. Cf. United States v. Treadwell, 593 F.3d 990, 1005–08 (9th Cir. 2010). The district court explicitly found that "[t]he evidence at trial, including the marketing materials that [DiRoberto] developed," belied the claim "that . . . DiRoberto never represented that he was acting on behalf of a government agency," and that DiRoberto himself made such misrepresentations. These findings were supported by the record.

**V. Restitution.** The district court did not err in ordering DiRoberto to pay restitution of $3,501,381, the full amount of losses of victims of 21st Century during his tenure. The Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, requires courts to order restitution to all identifiable victims of applicable crimes who have suffered pecuniary loss. A "victim" is defined as "a person directly and proximately harmed as a result of the commission of an offense for

12

which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). For scheme offenses such as mail fraud, this includes "any person directly harmed by the defendant's criminal conduct in the course of the scheme." Id. "Section 3663 . . . provides that if the offense of conviction involves a scheme, . . . restitution may include all losses caused during the course of that scheme." United States v. Thomsen, 830 F.3d 1049, 1064 (9th Cir. 2016) (quoting United States v. Gamma Tech Indus., Inc., 265 F.3d 917, 927 n.10 (9th Cir. 2001)). DiRoberto's counts of conviction involved a scheme. It was thus proper for the district court to order restitution based on the harm to all victims of the 21st Century "scheme," not just the victims of DiRoberto's counts of conviction.

The district court did not err in finding that every 21st Century customer during DiRoberto's tenure was a "victim" and that their losses were proximately caused by DiRoberto's conduct. At trial, the evidence showed that the misrepresentations that 21st Century employees made to customers were both systematic and pervasive at the company. No evidence was presented at sentencing that anyone paid money to 21st Century based on honest representations. The district court drew a reasonable conclusion based on the evidence that every person who sent money to 21st Century during DiRoberto's tenure was a "victim." Moreover, for the same reasons the district court found DiRoberto responsible for the losses to all victims of 21st Century due to his actions as its marketing director,

13

it was proper for the district court to find a "causal connection" between DiRoberto's conduct and the victims' losses for purposes of restitution.

**AFFIRMED.**